Steven **ZAHAROPOULOS** and Nicholas Makikatos, d/b/a Grecian Steak House, Respondents,

v.

H. P. (Gary) **SPRENGER**, a/k/a Sprenger and Associates, Ltd., Appellants.

No. 41284.

Missouri Court of Appeals, Eastern District, Division Two.

June 10, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1980.

Application to Transfer Denied Oct. 15, 1980.

Burton H. Shostak, Shostak & Witzel P.C., St. Louis, for appellants.

V. Kenneth Rohrer, Roberts, Roberts & Rohrer, Farmington, for respondents.

GUNN, Presiding Judge.

Plaintiffs–respondents operate a restaurant in a shopping center owned by defendants–appellants. Plaintiffs, as lessees, brought suit against defendants, as lessors, for damages, specific performance and a declaratory judgment as to the effect of certain disputed terms in the lease. From a judgment favorable to plaintiffs on all counts, defendants appeal.

Plaintiffs executed a lease with defendants and opened a restaurant in the demised premises shortly after the shopping center was constructed in 1974. Structural modifications were made and fixtures were installed by plaintiffs to render the premise suitable for the purveying of victuals to discriminating epicures. Included in the alterations was the installation of a hood and ventilation system to service the cooking apparatus which vented grease–bearing exhaust on the roof of the building. Under the terms of the lease, the defendants were responsible for providing adequate air conditioning, and several air conditioning units were installed on the roof of the restaurant, necessitating the cutting of openings in the roof. A dispute subsequently developed between the parties regarding the sufficiency of the air conditioning and water leakage that occurred in and around the areas where the openings were cut in the roof. Plaintiffs also complained that the heating in the premises was inadequate and that they suffered a consequent loss of business whenever the weather became too hot or too cold.

The parties' relationship further deteriorated when the sprinkler system in the premises burst, apparently due to freezing of the pipes. Plaintiffs' furnishings incurred extensive water damage as a result, and the restaurant had to be closed for a time for repairs.

After the shopping center had been open for about a year and a half, defendants were ordered by the Missouri Department of Natural Resources to upgrade a sewage lagoon servicing it. Accordingly, defendant Sprenger individually constructed a sewage treatment plant and began charging tenants of the center for its cost of operations. Plaintiffs, however, refused to pay any of the sewer charges.

Ultimately, plaintiffs filed suit for a variety of purposes: for $50,000 damages for profits lost due to the inadequate heating and cooling of the premises; for specific performance of certain obligations set out in the lease including maintenance of the premises, repair of leaks, and provision for adequate climate control equipment; for a declaratory judgment that the lease did not bar plaintiffs from suing defendants to recover profits lost due to the sprinkler malfunction; and for a declaration that they were not liable for any of the sewer charges levied by defendant Sprenger. The trial court entered judgment in plaintiffs' favor for $40,000 damages and granted the other requested relief.

In their first point, defendants complain that the trial court's damage award of $40,000 is without proper evidentiary support. Specifically, they argue that plaintiffs failed to show the exact time period during which they suffered a reduction in business due to climate control and leakage problems on the leased premises, the amount of total sales during the period, the costs of the goods sold, other overhead expenses for the period in question, and net income or profits for both before and during that period.

■ This was a court tried case, and we must defer to the judgment of the trial court as to factual determinations unless there is no substantial evidence in support thereof, or they are against the weight of the evidence. *Gauldin v. Corn*, 595 S.W.2d 329 (Mo.App.1980); *Cave v. Cave*, 593 S.W.2d 592 (Mo.App.1979). Further, the trial court entered no specific findings of fact, defendants having withdrawn their request for such findings at trial. Under these circumstances, "all fact issues will be deemed found in accordance with the result reached and the judgment will be affirmed if it is correct on any reasonable theory supported by the evidence." *Roth v. Roth*, 571 S.W.2d 659, 664 (Mo.App.1978). It is presumed that the trial court acted on a permissible basis. *In the Matter of M. D. H.*, 595 S.W.2d 448 (Mo.App.1980).

■ It is unnecessary to recount all the evidentiary minutiae adduced at trial. It is sufficient to note that plaintiffs testified to the frequency with which customers either left the premises without ordering because of malclimatic conditions, or tables were unusable in the first instance because humectated; the average gross proceeds per table per day and per customer; and the time period during which these conditions prevailed. Plaintiffs also made an offer of proof as to the percentage of retail food sales attributable to their costs, on the basis of which net profits could be calculated. The actual figures testified to by plaintiffs for these factors would support the $40,000 damage award, if these factors may properly constitute a basis for damage calculations. The loss of anticipated profits is recoverable where "made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount." *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299 (Mo.App.1980). The factors testified to by plaintiffs do form the sort of "basis for a rational estimate of lost profits" that was approved in *Orchard Container Corp.* and in *Mills v. Murray*, 472 S.W.2d 6, 16 (Mo.App.1971). The award of $40,000 is therefore correct under a "reasonable theory supported by the evidence," *Roth v. Roth*, and will be affirmed accordingly.

The only lease provision relating to defendants' obligations regarding climate control provides, *in toto*: "Lessor will provide

sufficient air conditioning in order to maintain the rental premises at a temperature of 75 ° throughout." Apparently based on this provision, the following language appears in the judgment:

and further, Defendant is ordered to install ten tons of additional cooling units, one hundred sixty thousand BTU's of additional heating equipment and the necessary duct and fixtures, so as to maintain a 75 degree temperature in the let premises year round, and further, . . .

Defendants complain that their obligations are limited under the quoted lease provision to air conditioning alone, so that the order as to heating requirements has no basis in the lease. Further, they contend, that the quantitative requirements as to additional amounts of heating and cooling systems are without evidentiary support. Plaintiffs respond by arguing that defendant Sprenger judicially admitted his heating obligation and by directing our attention to certain testimony as to how much additional climate control equipment was necessary on the premises.

■ Plaintiffs' position is foiled by the fundamental precept that the court is not free to vary the written terms of the lease by reliance on the testimony of any party, absent a prior determination that such terms are ambiguous. *Haggard v. Mid-States Metal Lines, Inc.*, 591 S.W.2d 71 (Mo. App.1979); *Goodman v. Goodman*, 576 S.W.2d 747 (Mo.App.1979). The resolution of the issue of ambiguity is committed to the trial court as a question of law in the first instance. *Rouggly v. Whitman*, 592 S.W.2d 516 (Mo.App.1979). If erroneous, determinations in that regard do not enjoy the deferential treatment on review afforded factual resolutions under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Rouggly*, 592 S.W.2d at 519–520.

■ The lease provision dealing with the air conditioning requirement is plain and unequivocal. Its terms expressly require only "air conditioning" sufficient to maintain a 75 ° temperature "throughout" the premises. It is not "reasonably susceptible of different constructions" and hence not

ambiguous. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Any order of specific performance based on a different construction would be without support and erroneous. The judgment should be amended to delete any requirement that defendants install additional heating equipment.

■ Next, we consider whether the quantitative requirement of additional air conditioning equipment is supported by the evidence. Plaintiffs introduced evidence of temperatures within the premises recorded over a period of time which indicated that the premises tended to be too hot during the summer months. Plaintiffs also called an experienced air conditioning repairman who had serviced their units and who was familiar with the premises. He testified that an additional 12½ tons of cooling system were necessary to maintain the premises at the 75 ° temperature. On this state of the record we cannot conclude that the additional cooling requirement of 10 tons of equipment is unsupported by or against the weight of the evidence, and we may not disturb it. *Corley v. McGaugh*, 595 S.W.2d 471 (Mo.App. banc, S.D., 1980).

Defendants next object that that portion of the judgment compelling them to "stop up openings between the roof and exterior wall with insulation to prevent the free exchange of ambient and interior air in and about the premises" was without evidentiary support, in that there was some evidence that all such openings may have been repaired prior to trial. The objection is qualitatively deficient. Aside from the fact that, as defendants correctly concede, the "record is not clear" whether this is the case, they would not be prejudiced by this aspect of the order if, as they argue, the required work has already been performed inasmuch as the order would be moot.

■ Similarly, defendants complain of the portion of the judgment requiring roof repairs sufficient to remedy the leakage problems experienced by plaintiffs. They urge that there was evidence they had expressed, prior to trial, a willingness to have

the roof repaired but were frustrated in their efforts by the presence of grease on the roof that had been vented from the premises. Specifically, defendants argue that the party retained to bid on and perform the work indicated that he would not perform the roof repairs nor guarantee them unless the grease were removed. The enervating effect on defendants' argument is that it admits the very fact addressed by the objected–to portion of the judgment—that is, the roof needs repairs which have not been performed. There was no showing that the presence of grease had rendered the repairs impossible of performance or that the grease may not be removed antecedent to the actual repair work. Again, this portion of the judgment is fully supported by the evidence.

Defendants next attack that portion of the judgment declaring that the lease does not prohibit plaintiffs from pursuing a cause of action in negligence against the defendants for revenues lost due to the rupture of the sprinkler system, citing *Govero v. Standard Oil Co.*, 192 F.2d 962 (8th Cir. 1951). Although *Govero* deals with a similar set of circumstances, it is not precisely in point.

The considered lease provision is as follows:

> 13. Lessor shall not be liable to said Lessee for any damage to its person or property caused by water, rain, snow, frost, fire, storm and accidents, or by breakage, stoppage or leakage of water, gas, heating and sewer pipes or plumbing, upon, about or adjacent to said premises.

*Govero* does hold that a landlord and tenant may properly agree that the tenant will assume all liability for injuries occurring on the demised premises, whether caused by the landlord's negligence or otherwise. However, the lease in *Govero* provided that the lessee was to indemnify and hold the lessor harmless from all claims or liability arising from:

> *any loss,* damage, injuries, or other casualty of *whatsoever kind or by whomsoever caused,* to the person or property of anyone (including the Lessee) on or off

the premises, arising out of or resulting from the Lessee's use, possession or operation thereof, or from the installation, existence, use, maintenance, condition, repair, alteration, or removal of any equipment thereon, whether due in whole or in part to negligent acts or omissions of the Lessor, its agents or employees; . . .

*Id.* at 963. (emphasis added) This generalized undertaking to indemnify against "any loss . . . of whatsoever kind" is considerably broader in scope than the provision before us, which purports to limit its application only to personal injury and property damage. If lost profits resulting from the lessors' negligence were intended to be included within its ambit, the parties could have explicitly so provided. The trial court did not err in declaring that the instant provision did not operate to bar plaintiffs from pursuing a cause of action against defendants for lost profits resulting from a negligently caused break in the sprinkler system.

Finally, defendants object to the trial court's conclusion that plaintiffs were not obligated to pay a monthly sewer fee under paragraph 10, or alternatively, paragraphs 6 and 7, of the lease. Paragraph 10 provides in part:

> 10. Lessee shall pay for all utilities, including gas, steam, water and electricity, and sewer charges imposed by governmental authorities (except real estate taxes and assessments), and shall pay for the cost of fuel for heating and the cost of power and refrigerant for air–conditioning for areas occupied by Lessees. Suitable meters to record the Lessee's use of said utilities and facilities shall be installed by Lessor at its expense. . . .

Paragraphs 6 and 7 provide that plaintiffs, as lessees, and their employees and customers have a nonexclusive right to the use of "common areas" in the shopping center, subject to defendant's control with:

> [t]he cost of the maintenance, repair and deferred maintenance and the cost of utilities of the entire common area shall be borne by Lessees of the Shopping Center, and shall be pro–rated and paid by

the Lessee in proportion to the square foot building area occupied by the Lessee is to the total leasable building area of the Shopping Center. . . .

Defendant Sprenger individually constructed and operated a sewer treatment facility to service the shopping center approximately one and one half years following the completion of the shopping center and execution of the lease in 1974. Until that time, the shopping center was merely serviced by a raw sewage lagoon, for which the shopping center tenants were charged nothing. Thereafter, defendant Sprenger was required by the State of Missouri to replace the lagoon with a treatment facility for which the tenants were billed for costs of operation.

Plaintiffs argue that the language "sewer charges imposed by governmental authorities" of paragraph 10 exculpates them from any liability for defendants' sewer bills inasmuch as the treatment plant is owned by Sprenger. But their position is antagonistic to the terms of the lease and would call for an improper riving of one provision from the entire contract. Aside from the fact that the sewer charges have been indirectly imposed in that the state government ordered the installation of the facility in the first instance, the language "lessee shall pay for *all utilities* . . ." is dispositive. This is expansive and all-inclusive. It clearly indicates a meeting of the minds of the parties that plaintiffs, as lessees, would assume utility expenses, including whatever sewer charges might be incurred. The fact that several examples of utilities were mentioned in the lease without mentioning private sewers is not significant. The language of the lease regarding payment of utility costs does not indicate any intent to cleave or reduce the lessees' responsibility for such costs. Our conclusion in this regard is bolstered by the provisions of paragraphs 6 and 7 of the lease allowing plaintiffs the use of the treatment facility in common with other tenants with the obligation to share in its expense on a pro rata basis. The aspect of the judgment exculpating plaintiffs from

sewer expense is erroneous but may be rectified on this review. *Arrington v. Westport Bank*, 577 S.W.2d 166 (Mo.App.1979). Accordingly, the judgment is amended by our finding that plaintiffs are required to pay sewer costs.

Judgment affirmed as amended and modified.

CRIST and PUDLOWSKI, JJ., concur.