61479. BASIC FOUR CORPORATION v. PARKER.

QUILLIAN, Chief Judge.

This is a suit for sales commissions and involves the construction of a written agreement concerning the payment of commissions.

While plaintiff-appellee Parker was employed as a salesman in 1977 by defendant-appellant Basic Four Corporation (BFC) which marketed computers, Parker sold a computer to each of three companies; Holcombe Armature Company (Holcombe), DeKalb Office Equipment (DeKalb), and Select Service & Supply (Select). In accordance with a written compensation agreement between Parker and BFC, Parker would have been entitled to the full commissions on

the Holcombe and DeKalb accounts if he continued as a commission salesman on those accounts until they were paid in full. The Select account concerned only the calculation of Parker's portion of a commission he had agreed in writing to split with another salesman. Being unable to continue working due to a job-related injury Parker went on disability leave on March 6, 1978, and BFC changed his status ("terminated" was the term used) as salesman on commission plus salary to that of an employee on salary only. After his status was so changed, Parker's Holcombe and DeKalb accounts were assigned to another salesman or to the corporation by BFC under the provisions of the compensation agreement. This resulted in Parker receiving less than the full commissions on those accounts. He resigned from BFC on June 1, 1978 and was eventually paid a total of $10,280.58 in commissions on the three accounts. Claiming he was entitled to an additional $14,262.48 in commissions, Parker commenced this suit for that amount plus attorney's fees. Upon trial the jury returned a verdict for Parker of $11,932 plus $4,513.75 attorney's fees, from which BFC takes this appeal. *Held:*

1. Error is claimed because the trial court refused to construe the written compensation agreement as to the Holcombe and DeKalb claims, denied BFC's motion for a directed verdict, failed to instruct the jury on how the agreement should be applied to the facts, and subsequently denied judgment notwithstanding the verdict or a new trial on these grounds.

" 'Construction of written contracts, even if they are ambiguous, is a matter for the court and no jury question arises unless after application of applicable rules of construction the ambiguity remains.' *Chalkley v. Ward,* 119 Ga. App. 227, 235 (166 SE2d 748) (1969). See also *Davis v. United &c. Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488) (1959)." *Hardin v. Great Northern Nekoosa,* 237 Ga. 594, 597 (229 SE2d 371).

The relevant portions of the compensation agreement, in summary, are:

Commissions will be credited to a salesman's account and paid to the salesman when full payment for a sale is received by BFC.

In hardware-software sales (which both Holcombe and DeKalb were) 40% of the commission is for booking the sale and 60% for installing or putting the equipment into operation after the sale is booked.

The selling or booking commission will be credited to the salesman who obtained the order and the installing commission will be credited to the salesman who installed the system provided the account is still assigned to the salesman on the date of full payment.

When a salesman leaves his assigned territory (whether by promotion, transfer or termination) prior to full payment, the installing portion of the sales commission will become a house account. Management, at its discretion, may assign the balance of the commission due on these transactions to another salesman.

When a salesman is transferred from a commissionable basis to a non-commissionable basis or terminates employment before an account is paid in full, the salesman is credited with the booking or selling portion of the total commission (40%) due on any sale booked before termination but installed and collected after the date of termination. Management, at its discretion, may assign the balance of the commission (60% installing commission) to another salesman or hold it for BFC's (house) account.

On the Holcombe account the evidence shows that Parker was entitled to and did receive the booking or 40% portion of the commission. Holcombe did not pay the account in full until September 1978, well after Parker had resigned his employment with BFC on June 1, 1978. When Parker resigned, the Holcombe account had been assigned to another salesman by BFC. Under the terms of the compensation agreement, BFC was authorized to take this action when Parker was transferred from a commissionable basis or his employment terminated, and Parker was not entitled to receive the 60% installing portion of the commission.

In connection with the DeKalb account the evidence shows that when Parker went on medical leave because he was unable to work, BFC terminated him as a commission salesman on March 6, 1978. This is shown on Parker's sales history statement for March. By letter of March 9, Parker was informed that he would be paid his salary while on medical leave. On April 3, Parker received a copy of a memo from his branch manager to BFC headquarters informing BFC that Parker would receive the full DeKalb commission if DeKalb paid in full by April 15. If DeKalb did not so pay, the installing commission (incorrectly stated as 40%) would be assigned to another salesman. On May 12, Parker was sent a letter by his branch manager informing him that he had not been on (sales) quota since March 6, and that all of his accounts had been reassigned. The DeKalb account was paid in full in May and Parker was credited only with the booking commission thereon.

Parker contends that under the agreement he could not be changed from a commissionable to a non-commissionable status for going on medical leave and that, therefore, he was in a commissionable status when the DeKalb account was paid in May and entitled to the installing commission.

In addition to the provisions summarized above, the agreement

reserved to BFC the right to make any adjustments or revisions with respect to salaries, rates and items of commission, quota, or any other matter affecting a salesman at any time. It also authorized BFC, with or without cause, to terminate the employment of any salesman.

Having the authority to terminate Parker's employment at any time without cause, BFC certainly had authority to terminate his status as a salesman on commission while he was on medical leave. Accordingly, we construe the agreement as authorizing BFC to take Parker off commissionable status when he was unable to continue functioning as a salesman due to an extended medical disability, and to assign his DeKalb account and the installing commission elsewhere.

Parker's claims that he was entitled to the full commissions on both the Holcombe and DeKalb accounts based on evidence that he did a lot of work to make the sales, that he had no control over when the accounts could be paid and that he resigned only because he felt that the commissions were improperly taken from him, are equitable arguments. They have no relevancy to the construction of the compensation agreement he made with BFC. Under the terms of that agreement a commission was payable only when an account was paid in full, and that if a salesman was no longer assigned an account when it was so paid, he was entitled to receive only the booking, not the installing commission. Although Parker may not have liked the terms of the agreement when applied against him, those are the terms he agreed to.

" 'Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish [cits.], and the written contract defines the full extent of their rights and duties. [Cit.] . . . In the absence of a public policy question, parties may contract to waive numerous and substantial rights. [Cit.]' *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363, 368-369 (203 SE2d 587) (1973)." *Sugarman v. Shaginaw,* 151 Ga. App. 621, 625 (260 SE2d 731).

We find that the compensation agreement is plain and unambiguous and the relevant facts to which the contract applied are undisputed. There is no conflict in the evidence as to any material issue and the evidence demands a verdict for BFC. Therefore, the trial court erred in failing to grant judgment notwithstanding the verdict for BFC on these two claims. Code Ann. § 81A-150 (a).

2. The remaining account involved a sale in 1977 by Parker of a computer to Select, conditioned upon BFC's sale of Select's old computer. The old computer was sold in 1978 by another BFC salesman. Parker agreed in writing to split the commission with the other salesman. Parker claimed that because he had received

commission statements from BFC which set out his portion of the commission as $3,683.48, which BFC subsequently changed to $2,112.75, that he was entitled to the difference, or $1,570.73.

The evidence shows that the sale of the computer to Select was for $45,475 and that Select's old computer was sold for $22,000. Parker agreed in writing to split the commissionable amount with the salesman who sold the old computer and that Parker would receive his commission on $23,475 ($45,475-$22,000) under the 1977 compensation agreement.

Parker's claim is based solely on evidence that he received several commission statements from BFC indicating his commission on the Select account would be $3,683.48, and his testimony that the 1978 compensation agreement entitled him to that amount. However, the 1978 compensation agreement was not in evidence.

BFC produced evidence that the amount in Parker's commission statements was initially incorrect due to an administrative error, and that it was corrected to $2,112.75. The 1977 compensation agreement, in effect when Parker made the sale, provided that the commission on the commissionable amount Parker agreed to with the other salesman was 9%, or $2,112.75, which he received.

We find that there was no conflict in the competent evidence showing that Parker was entitled to no more than he received as commission on the Select account, and that the evidence demanded a verdict for BFC. Thus, the trial court erred in failing to grant judgment notwithstanding the verdict and directing a verdict for BFC on this claim. Code Ann. § 81A-150 (a).

Since we have found that Parker was not entitled to recover on any of his claims, the verdict for the attorney's fees also cannot stand. " 'Expenses of litigation and attorney fees are recoverable only in cases where elements of damages are recoverable.' [Cit.]" *Minter v. Powell,* 152 Ga. App. 449 (4), 452 (263 SE2d 235).

*Judgment reversed and remanded with direction to direct a verdict for defendant. McMurray, P. J., and Pope, J., concur.*

DECIDED MARCH 3, 1981 —
REHEARING DENIED MARCH 26, 1981.

*Jerry B. Blackstock, Karen Wildau,* for appellant.
*Robert P. Mallis,* for appellee.