**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellant,**

v.

**MISSOURI STATE BANK AND TRUST COMPANY, Respondent.**

No. 43920.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 11, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1983.

Armstrong, Teasdale, Kramer & Vaughan, Thomas B. Weaver, Donald V. Beimdiek, St. Louis, for appellant.

Newman & Bronson, Mark I. Bronson, St. Louis, for respondent.

SIMON, Presiding Judge.

Republic National Life Insurance Company (Republic) appeals from a judgment of the Circuit Court of the City of St. Louis in favor of Missouri State Bank and Trust Company (Bank). The jury found for Bank in a rent and possession action brought by Republic. Republic appeals.

Republic contends the trial court erred in its failure to: (1) submit a definition of terms contained in the verdict director; (2) direct a verdict for Republic at the close of all the evidence; and (3) exclude evidence alleged by Republic to be irrelevant, prejudicial and inadmissible hearsay. We reverse.

On July 11, 1966, Centennial Development Corporation (Centennial) and Bank entered into a lease agreement covering premises owned by Centennial. The lease was for twenty-one years and provided for a minimum annual rent of $20,000 and further provided:

> In addition to the basic annual rental, when the total deposits of the lessee, as determined by averaging the last four quarterly calls of the regulatory agencies for the previous calendar year, reaches $6,000,000, then the lessee shall pay as additional rent $1500 annually payable in equal monthly installments beginning the first day of the year subsequent to the attaining of the required deposit level. The additional rental shall thereafter be calculated as follows:

| Deposits | Additional Rental |
| --- | --- |
| $7,000,000 to $42,000,000 | $1500 per $1,000,000 |

> In no event shall the annual rental exceed $72,000.

Further, the lessor has the option to treat the lease as forfeited if the lessee fails to comply with the lease provisions and the acceptance of any rent payments does not constitute a waiver of the forfeiture.

On January 13, 1967, Republic loaned Centennial $5,600,000 secured by a deed of trust on the building containing the premises leased to Bank. Centennial subsequently defaulted and Republic acquired title to the building pursuant to a foreclosure sale in April, 1974.

While Centennial was owner of the premises, the procedure for billing Bank for the rent due entailed Bank sending Ms. Henson at Centennial a computation of deposits from which the additional rent was computed. Henson used Bank's deposit computations in preparing the rental statements. Henson had been performing these duties for Centennial since 1972 and continued to do so for Republic after its acquisition of the building.

Bank's computation of deposits was accomplished by deducting from its "Gross Deposits" the total of "Official Checks," "Accounts Payable," "U.S.T.T.L." and "Public Funds." The balance was labeled "Net Deposits." The quarterly call reports of the regulatory agencies referred to in the lease contained a line item designated "Total Deposits" which included the items deducted by Bank in arriving at "Net Deposits."

This procedure was followed from at least 1972 through 1976. Bank's computations were not questioned, but in 1976 Bank did not deduct from "Gross Deposits" any amount representing "Accounts Payable" or "U.S.T.T.L." Henson became suspicious

and notified Mr. Griffith at Bank who informed her that "Accounts Payable" was negligible and the "U.S.T.T.L." amount had been included in "Public Funds." Upon learning this, Republic requested Bank to send the call reports upon which the additional rent was based. This was the first time Bank had been asked for these reports.

Republic determined from the call reports that Bank's additional rent had not been based on "Total Deposits" as contained in the call reports and calculated a $9505 rent deficiency which Bank refused to remit. Pursuant to its option, Republic treated the failure to pay the $9505 as a forfeiture of the lease.

Initially, the case was tried in the Magistrate Court praying for restitution of the premises and $3500 for additional rent. (Magistrate's Court jurisdictional limit.) Judgment was entered for Bank, and Republic appealed to the Circuit Court.

Trial in the Circuit Court was held in January, 1979 and a verdict was rendered in Bank's favor. The trial court sustained Republic's motion for a new trial on the grounds that it erred in: (1) permitting Bank to cross-examine Republic's witness on the basis of two letters written in 1971 by William Dowd, then president of Bank, to Centennial's representatives; and (2) submitting a deficient instruction.

The new trial, from which this appeal arises, was held in October, 1980. William Dowd, the former president of Bank, testified on cross-examination that at an earlier date the additional rent had been based on "Total Deposits" as contained in the call reports but, as a result of information presented to him, the additional rent was calculated in accordance with "Net Deposits." On redirect examination, over Republic's objections, Dowd testified about the contents of the 1971 letters, which he sent to Centennial's representatives, regarding a clarification and understanding of the term "Total Deposits." The letters were offered in evidence, but denied. The trial court allowed Dowd's testimony on redirect because of his testimony on cross-examination concerning the change in the method of calculating the additional rent.

■ Our review shall begin with Republic's third point, that the trial court erred in permitting the testimony on redirect as to the contents of the two letters written by Dowd to Centennial's representatives. Bank contends that Dowd's testimony did not concern modification, which it had pleaded as an affirmative defense in addition to estoppel, waiver and laches. The first letter dated March 9, 1971 concerned the computation of "Total Deposits" and recited that certain items should be deducted from "Total Deposits" as reflected in the call reports and further asked that the matter be taken up with the owner. The second letter dated March 24, 1971 provided that pursuant to a conversation with a Centennial representative, it was Dowd's understanding that the term "deposits" would not include those certain items, even though the items were so included in the call reports. The letter further requested that if the suggested changes met with approval, that a copy of the letter be signed and returned. The record does not indicate that the copy of the letter was ever signed and returned.

In *Kage v. 1975 Dunn Road, Inc.,* 428 S.W.2d 735 (Mo.1968), our Supreme Court stated:

In *McFarland Real Estate Co. v. Joseph Gerardi Hotel Co.,* 202 Mo. 597, 100 S.W. 577, 578, we said concerning the effect of the foreclosure of a prior deed of trust on a lease made subsequent to its execution and recording: "When the sale took place, it was as effectual in extinguishing all the interest of the parties to the lease as the judgment of a competent court decreeing a forfeiture would be, and leaves no legal or equitable estate in either party upon which to base legal claims. *Cook v. BaSom,* 164 Mo. 594, 65 S.W. 227. So it necessarily follows that the oral contract of renting entered into between the parties did not have the effect of breathing new life into the lease and thereby constitute it a written lease between them. After the sale the parties

stood in the same relation to each other as if the lease had never been executed. It was thereby nullified and extinguished, and the plaintiff in error became the tenant at will of the purchaser." We reaffirmed this ruling in *Sinclair Refining Co. v. Wyatt,* 347 Mo. 862, 149 S.W.2d 353, 355; see also *Stone v. Hammons,* 347 Mo. 129, 146 S.W.2d 606, 608; *S.S. Kresge Co. v. Shankman,* 240 Mo.App. 639, 212 S.W.2d 794, 801. It was further held in the *McFarland* case (100 S.W. l.c. 578) that an oral agreement for such a lessee to continue to occupy the premises after foreclosure was converted by what is now Sec. 441.060(2), RSMo, V.A.M.S., into a month to month tenancy.

Thus, it logically and reasonably follows that if in 1974 an understanding or clarification of the term "deposits," which results in a modification of a lease provision had occurred, it was of no effect since it was subsequent to the deed of trust executed in 1967. The trial court erred in permitting this irrelevant testimony pertaining to an alleged modification of the lease. Clearly, Republic was prejudiced by this evidence indicating to the jury that an understanding had occurred which modified an unambiguous lease provision. The judgment shall be reversed and remanded. Since the cause is remanded, we shall consider Republic's other contentions as they may arise on retrial.

■ In its second point, Republic contends the trial court erred in not directing a verdict in its favor at the close of all the evidence. Republic, as plaintiff, has the burden of proof and a verdict may be directed for the party having the burden of proof only in unusual or exceptional circumstances. *Reeves v. Smith,* 468 S.W.2d 713, 715 (Mo.App.1971). Such circumstances exist where the proof is so clear and unequivocal and of such a nature as to permit no reasonable inference contrary to the verdict directed. *Reeves,* at 715. Where the proof is entirely documentary or the facts upon which it rests are admitted, a directed verdict may be granted. *Reeves,* at 715. Our review of the record indicates that the trial

court correctly denied Republic's motion. Republic's third point is not meritorious.

Finally, in its first point, Republic contends the trial court erred in failing to submit an instruction defining the phrase "additional rent required by the lease" as contained in the verdict director. Republic argues that without this definition, the jury was permitted to interpret the phrase contrary to its unambiguous meaning.

The jury was instructed:

Your verdict must be for Plaintiff, Republic National Life Insurance Company if you believe:

First, Defendant did not pay the full amount of additional rent required by the lease, and

Second, because of such failure, Defendant's contract obligations were not substantially performed, and

Third, Plaintiff Republic National Life Insurance Company was thereby damaged.

A converse instruction was given which read:

Your verdict must be for Defendant unless you believe that defendant did not pay the full amount of additional rent required by the lease.

The definition tendered by Republic, which the trial court refused, provided:

The phrase "additional rent required by the lease" means that the Defendant must pay as additional rent the sum of $1,500.00 annually for each one million dollars of total deposits as determined by averaging the last four quarterly calls of the bank regulatory agencies for the previous calendar year, which the Defendant bank has in excess of five million dollars and up to forty-two million dollars, which additional rent is payable in equal monthly installments.

The word "total", as used in this instruction, means whole, undivided, entire, complete, utter, absolute.

■ The submitted verdict director tracks MAI 26.02 (1980 Revision) Verdict Directing—Breach of Bilateral Contract—Breach Sole Issue. MAI 26.02 is the proper

verdict director where the terms of a contract are not in dispute and the only issues are whether a breach occurred and the resultant damages. *Braun v. Lorenz,* 585 S.W.2d 102, 107 (Mo.App.1979).

Accordingly, by submitting MAI 26.02 to the jury, the trial court determined that the additional rent provision in the lease was not ambiguous. The issue of ambiguity is a question of law for the court "in the first instance." *Zaharopoulos v. Sprenger,* 605 S.W.2d 143, 146 (Mo.App. 1980). A provision is ambiguous only when it is reasonably susceptible of different constructions and not by the fact that the parties do not agree on its construction. The court should not resort to construing an unambiguous provision. The intention of the parties shall be determined from the instrument alone. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo.1973).

We conclude that the terms of the lease concerning the calculation of additional rent are not ambiguous, i.e., not reasonably susceptible of different constructions. The lease clearly provides that additional rent is to be based on "total deposits of the lessee [Bank], as determined by averaging the last four quarterly calls of the regulatory agencies." The call reports are incorporated in the lease by the specific referral to them. *Welch v. North Hills Bank,* 442 S.W.2d 98, 101 (Mo.App.1969).

Accordingly, since we have ruled that the testimony concerning an alleged understanding or clarification is inadmissible, there is no need for a definition instruction. The issues for the jury will be properly submitted in MAI 26.02.

Judgment reversed and remanded.

STEPHAN and SATZ, JJ., concur.