**Theodore SLUSHER, Plaintiff–Appellant,**

v.

**MID–AMERICA BROADCASTING, INC., Defendant–Respondent.**

No. 16771.

Missouri Court of Appeals,
Southern District,
Division Two.

June 14, 1991.

Stephen P. Carlton, Johnston & Carlton, Carthage, for plaintiff-appellant.

William J. Lasley, Flanigan, McCanse & Lasley, Carthage, for defendant-respondent.

HOGAN, Judge.

This is an action for breach of a contract of employment. Plaintiff Theodore Slusher served as a regional sales manager for the defendant and, prior to his discharge on October 31, 1984, had procured orders for advertising to be aired on the defendant's television station, KSNF–TV in Joplin, Missouri. The advertising in question was run in November and December of 1984 and January 1985. The plaintiff's claim, generally stated, is that he is entitled to a commission on the advertising which was aired in November, December and January because he procured the contracts for that advertising before his discharge on October 31. Defendant maintains that the plaintiff actually contracted to furnish a species of service which could not be provided if the plaintiff was not the defendant's employee.

The cause was tried to the court sitting without a jury. Judgment for plaintiff in the amount of $599.77 was entered, plus prejudgment interest at the statutory rate from and after October 31, 1984. No complaint is made of the judgment for $599.77 nor of the allowance of prejudgment interest. The plaintiff's sole point on this appeal is that he is entitled to commissions in the amount of $8,677.23 which he earned before he was discharged. The merits of the appeal depend primarily upon the construction of plaintiff's contract of employment and, to a lesser extent, upon the nature of the services he was employed to provide for the defendant's advertisers.

We must first consider that part of plaintiff's contract of employment which addresses his compensation. The contract is in writing and was received as Defendant's Exhibit "A". This agreement is as follows:

"KSN SALES DEPARTMENT
COMPENSATION
AGREEMENT

There are two plans whereby a KSN Salesperson may be compensated. Sales-

persons may select which plan will be used. The two plans are:

Plan I.  Sales commission payable upon receipt of client's payment to KSN.

Plan II.  Approximate estimated amount of commission earned during prior month may be advanced to salesperson prior to client's payment to KSN with the following stipulations:

A.  If KSN has not received payment from client on sales with respect to which commissions have been advanced after 90 days, one-half of the advanced amount pertaining to that delinquent account will be deducted from the next monthly advance to the salesperson; the remaining portion of the advanced commission may be deducted when in the opinion of KSN management that [sic] possible and reasonable avenues of collection have been exhausted.

B.  When client payments of delinquent amounts are made after advanced commission has been deducted, those deducted amounts will be returned to the salesperson provided that person is still employed in a sales capacity by KSN.

C.  A proportionate amount of attorney and collection agency fees incurred in collecting accounts will be deducted from the commission payable so that the actual sales commission will be calculated on the net amount collected."

It is conceded that the amount earned was the same under either plan.  Under Plan I, however, a salesman received his commission when the advertiser actually made payment to the TV station.  Under Plan II, the estimated compensation earned by the salesman was paid after the advertising had been aired but before the advertiser paid the station.  If the employee chose to be compensated under Plan II and the advertiser did not pay the station, the commission which had been paid was deducted from future paychecks.  The basic difference between the two plans was that under Plan II the employee or commission salesman received his commission sooner

than he would have received it under Plan I.

The contract of employment contains a further provision dealing with plaintiff's discharge and the compensation due upon discharge.  It reads as follows:

*"It is agreed because of the nature of the Television advertising business and the necessity of continual and frequent service required by advertisers after they contract to purchase advertising time in order to complete the sale, commissions will be paid only while salesperson is employed in that capacity by KSN.*

*It is also understood that KSN management may have the right to invoke Plan I to cover the last 30 days of my employment due to resignations or termination."*  (Emphasis added.)

It has been stipulated in this court that the plaintiff fully agreed to those provisions of the contract we have just quoted.

The plaintiff was discharged on October 31, 1984.  No claim is made that the defendant was not entitled to terminate his employment.  The plaintiff received commissions on all of his accounts which actually aired before October 31, 1984.  The defendant refused to pay the plaintiff commissions on advertisements procured by or ordered through the plaintiff but which were not aired during the time he was employed by the defendant.

As indicated, the nature of the services the plaintiff was employed to perform is important in this case.  In our view, the trier of fact could quite properly have concluded that plaintiff's continuing service was necessary during the life of the advertising contract.  Upon cross-examination the plaintiff testified that "continued relationships and continued service" were vital parts of the sales process.  In the TV advertising business, customers have the right to cancel, modify, or supplement their ads prior to the time they are aired.  There was evidence that when a particular advertising program has aired it is subjected to what was called a "post-sales" or "post-buy" analysis to see if it accomplished its intended purpose.  Although the plaintiff

denied that the salesman took part in the "post-buy" analysis, there was evidence to the contrary. A discussion of the plaintiff's duties as an advertising salesman, or more accurately the duties of commission salesmen who sell advertising for TV stations, could be expanded, but a detailed restatement of the evidence is not necessary. It is enough to say there was evidence that an advertising salesman was required to supervise the contract made with the advertisers from the time the order was placed until the contract was fully performed.

The plaintiff's only assignment of error on this appeal, as presented, is that "the trial court erred in granting judgment in favor of respondent for the reason that ... [appellant] had fully performed under the contract prior to his termination and that respondent prohibited appellant from further performance under the contract by terminating him." The plaintiff relies heavily on *Mathews v. Knoll Associates, Inc.,* 388 S.W.2d 529 (Mo.App.1965), although he has cited several other precedents of greater or lesser applicability to the situation at hand. In *Mathews,* the defendant manufactured and sold furniture. Plaintiff was employed by the defendant under a written contract as a regional sales manager; she received a salary and commission based on sales. After the plaintiff's employment was terminated, the defendant refused to pay commissions on merchandise which had been ordered but had not been delivered. The defendant received payment in full for merchandise invoiced and shipped. The employment contract contained the following provision concerning the payment of plaintiff's compensation upon termination of her employment:

"9. Upon termination of Knoll's employment of a Regional Manager, salary and commissions shall be computed to the date of termination of employment and paid within 15 days thereafter.... *No commission or compensation whatsoever shall be paid by Knoll on account of sales made to customers on or after the date of termination even though such sales relate to orders con-*

*firmed prior to the date of termination....*" (Emphasis added.)

The plaintiff brought an action to recover commissions due her on sales made while she was employed but which were shipped after her termination. The trial court entered judgment for the plaintiff in the amount of $1,964.15 plus interest.

The defendant appealed and the appellate court construed the contract at length. The court upheld the trial court's determination that the contract was ambiguous and would, therefore, be construed and interpreted adversely to the defendant on all points of ambiguity. The court, among other things, called attention to the fact the contract contained no provisions which defined what services were to be performed to earn a commission based on sales or when such services were to be performed. The court restated some generally accepted principles concerning a salesman's entitlement to his commission and stated, 388 S.W.2d at 532–33:

"Here the plaintiff had obtained the orders and the orders were confirmed by defendant prior to the termination of the contract and plaintiff had thus accomplished all that she had within her power to do to earn her commissions...."

Although there is a degree of similarity between the language of the contract of employment considered in the *Mathews* case and that which is before us for construction, we do not believe *Mathews* is controlling. The two cases are factually dissimilar in that in *Mathews* the employee's service was completely performed when the sale was made; by contrast, the services which plaintiff was employed to perform in this case could not be performed unless he was working for the defendant.

■ The general principle of law which governs the merits of this appeal is that even when a discharge from employment is proper, an employer has no right to refuse to pay the employee for services rendered up to the time of discharge, unless the employee agrees by contract or written waiver to a different amount. W. Holloway and M. Leech, *Employment Termi-*

*nation*, p. 399–400 and nn. 3, 4 (1985). Otherwise put, the rule is that a person employed to solicit sales orders on a commission basis is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. This general rule may be altered by a written agreement by the parties or by conduct of the parties which clearly demonstrates a different compensation scheme. *Weick v. Rickenbaugh Cadillac Company*, 134 Colo. 283, 303 P.2d 685, 688 (1956); *Vector Engineering and Manufacturing Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind.App.1982); *Oken v. National Chain Co.*, 424 A.2d 234, 235–36[1] [2, 3] (R.I.1981).

It would be possible to examine any number of decisions to attempt to find one which would be convincing because the facts are similar. Nevertheless the choice of contractual arrangements which might be made between an employer and his employee is, at least theoretically, infinite, and although we might examine all the cases cited to us for points of similarity or difference, we are, in the final analysis, remitted to general principles to determine the merits of this appeal.

The decision in *Mathews* was based on the court's finding that the language of the employment contract was ambiguous. The court found that the phrase "commissions based on sales" appeared repeatedly in Mathews' contract of employment but nothing therein set out what services had to be performed to earn a commission based on sales or when such services were to be performed. *Mathews v. Knoll Associates, Inc.*, 388 S.W.2d at 532. In the case before us, the parties specifically agreed that "because of the nature of the Television advertising business and the necessity of continual and frequent service required by advertisers after they contract to purchase advertising time in order to complete the sale, *commissions will be paid only while salesperson is employed in that capacity by KSN.*" (Emphasis added.) The parties further agreed that plaintiff's employer might have the right to invoke Plan I to cover the last 30 days of the plaintiff's employment.

Although, as we have said, we do not purport to decide this case solely on the basis of other factually similar precedents, we nevertheless note that similar limitations upon a commission salesman's earnings have been approved as against the argument that such limitations constitute forfeitures of compensation already earned. In *Marcin v. Darling Valve & Manufacturing Co.*, 259 F.Supp. 720 (W.D.Pa.1966), the contract of employment contained the following provision:

"... If the salesman should voluntarily resign or be discharged for any reason, he will be credited with standard commissions rates upon all sales in company records as of the official date of employment termination. The salesman will be paid commissions covering such sales when the orders are shipped, *but no commission shall be paid on material not shipped within three months of date of termination.*" (Emphasis added.)

The court indicated that while this provision was to be strictly construed, it was nevertheless valid, holding, 259 F.Supp. at 723:

"... under the law parties sui juris bind themselves by their lawful contracts, and the courts cannot alter the contracts because they may work a hardship or later seem unfair to one of the parties...."

In *Diana v. Burnside Motors, Inc.*, 30 Conn.Sup. 561, 304 A.2d 222 (1973), the court indicated that if the plaintiff's contract of employment had affirmatively spelled out that the salesman should not be entitled to any commissions upon the termination of his employment, such a contractual provision would have been enforced. In *Basic Four Corp. v. Parker*, 158 Ga.App. 117, 279 S.E.2d 241 (1981), the court upheld denial of commissions allegedly earned after the employee's discharge pursuant to contract provisions considerably similar to those found in this case.

Despite the similarity between the *Mathews* case and this case, we conclude

that in this case the language of the plaintiff's employment contract is not ambiguous; in our view, the language of the compensation agreement is perfectly clear. We must bear in mind that the issue of ambiguity is committed to the trial court as a question of law in the first instance. *Republic National Life Insurance Co. v. Missouri State Bank and Trust Co.*, 661 S.W.2d 803, 808 (Mo.App.1983); *Zaharopoulos v. Sprenger*, 605 S.W.2d 143, 146 (Mo.App.1980). The provisions of a contract are ambiguous only when they are reasonably susceptible of differing constructions, and the fact that the parties do not agree on the construction of those provisions does not make them ambiguous. *Republic National Life Insurance Co. v. Missouri State Bank and Trust Co.*, 661 S.W.2d at 808. The parties to this contract were perfectly free to contract as they wished, and this court should not resort to construing a contract which calls for no construction. *Republic National Life Insurance Co. v. Missouri State Bank and Trust Co.*, 661 S.W.2d at 808.

The plaintiff also argues the defendant prevented performance by the plaintiff and he should be allowed to recover as if he had performed his contract. The facts of the case do not fit the principle invoked. The contract itself authorized the defendant to discharge the plaintiff at any time and, in doing so, to terminate plaintiff's status as a salesman on commission. See *Basic Four Corp. v. Parker*, 279 S.E.2d at 243[1].

We find no error materially affecting the merits of the action in any respect briefed or argued in this court. Accordingly, the judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.

FLANIGAN, C.J., took no part in the consideration or decision of this case.