David CLEMONS, Plaintiff–Respondent,

v.

ZIMMER BROADCASTING COMPANY, INC., Defendant–Appellant.

No. 26325.

Missouri Court of Appeals, Southern District, Division One.

March 30, 2005.

---

Peter C. Edwards, Joplin, for appellant.

Charles Buchanan, Buchanan & Williams, P.C., Joplin, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Zimmer Broadcasting Company, Inc. ("Appellant") appeals from a $16,870.74 judgment entered in favor of David Clemons ("Respondent") in his suit to recover commissions he claims to have earned before the termination of his employment with Appellant. We affirm.

Respondent worked for Appellant selling radio advertising for which he was being paid a commission of eight percent on his sales. The testimony was conflicting about whether there was a written contract of employment. Respondent testified that he signed an employment agreement with Appellant, but also testified that there was no written contract pertaining to his commissions. George DiMarco ("DiMarco"), Appellant's general manager when Respondent was terminated, testified that he was not aware of any written contract with Respondent "[o]ther than when commissions were changed we put a typed contract in his file changing his commissions ..." Larry Boyd ("Boyd"), Appellant's general manager at the time of trial and a co-employee when Respondent worked there, testified that as far as he knew, Respondent had no written contract when he was terminated. There was no evidence of a written document concerning whether commissions would be paid after termination.

As part of his duties, Respondent serviced existing clients and made "cold calls" on new ones. His duties also included helping the client determine what their advertising needs were, when the commercials would air, what changes would be made in future commercials, and correcting problems with commercials not airing at the scheduled times. To accomplish these duties, Respondent would be in contact with clients several times each month.

The client was billed each month for the commercials that had aired. Local clients typically paid thirty days after being billed, and regional and national clients typically paid ninety days after billing. Respondent was not involved in the billing process, but sometimes helped collect unpaid invoices at Appellant's request. He received his commissions after Appellant had collected from the clients.

Although the exact reasons are unclear and are not at issue on this appeal, DiMarco told Respondent on Friday, January 25, 2002, that he was being terminated. The termination was not made effective until the following Monday or Tuesday in order to give Respondent a chance to collect some of the bills owed on accounts sold by him. Appellant, however, refused to pay Respondent commissions on accounts collected after the effective date of his termination even though these represented payment for ads that had been run prior to the end of his employment.

Respondent's suit against Appellant alleged in count one that he was entitled by contract to an eight percent commission on sales of commercials and that he had not been paid commissions owed to him on commercials that had been aired and billed, but not yet collected, at the time of his termination; in count two that he was entitled to an accounting of the amount owed him; and in count three that he was entitled to an equitable accounting.

There was evidence that $211,602 had been billed by Appellant for ads sold by Respondent and aired prior to his termination. The evidence also demonstrated that of that amount, $210,884.29 was actually collected, leaving only $718 uncollected.

DiMarco testified that in the radio advertising industry some employers paid commissions on collection and others paid commissions when the bills went out. He testified that payment on collection was the predominant method in the industry, and that he was not aware of anyone that had been paid commissions after termination. Respondent also admitted that he was not aware of anyone in the industry that was paid a commission after being fired.

All of Respondent's duties as to the advertising for which he is seeking commissions were complete at the time of his termination, except for collection of the bills. It is not clear from the record what action, if any, Respondent would have been required to take to collect any unpaid bills. He testified that he did not have many delinquent accounts because most of his accounts were "very good business" and that there was no reason to think that those accounts required any extra collection activity. DiMarco also testified that Respondent's accounts were good payers. Boyd testified that he did not know of any specific collection activities taken on any of Respondent's accounts after his termination, although he believed from the dates of payment of some of the accounts that some follow-up would have been involved.

The trial court found that Appellant had aired $210,884.29 worth of advertising sold by Respondent before he was fired but on which he had not been paid his eight percent commission. According to the evidence, this was the amount Appellant collected for the commercials that had aired prior to Respondent's termination. The court also found that Respondent's position had elements of both a manufacturer's representative and finder of business, but in regards to the disputed commissions in this case, the court found the only responsibility remaining for Respondent as to the commercials, which had already run, would have been to aid in the collection of the bills if necessary. It also noted that Re-

spondent's "continuing responsibilities to these accounts would be minimal" and that less than one percent of the bills for ads sold by Respondent were not collected. A judgment was entered for Respondent in the amount of $16,870.74, and this appeal followed.

■ Appellant presents one point on appeal. It claims the trial court erred when it found Respondent to be both a manufacturer's representative and a finder of business and entitled to post-termination commissions because its finding is not supported by the evidence and is a misapplication of the law. Appellant claims "that the evidence clearly reveals that Respondent is a manufacturing representative with continuing servicing responsibilities to his clients that survived his termination, and therefore is not entitled to be paid post-termination commissions."

■ The standard of review for court-tried cases is well established. The judgment of the trial court will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[1]

■ Missouri law differentiates between manufacturer's representatives and finders when determining whether a party is owed post-termination commissions. *J.S. DeWeese Co. v. Hughes–Treitler Mfg. Corp.,* 881 S.W.2d 638, 644–45 (Mo.App. E.D.1994). "A manufacturer's representative with servicing responsibilities loses his right to collect commissions on pre-termination business upon termination." *Id.* at 645. A finder, however, retains the right to commissions on business even after ter-

mination. *Id.* "The rationale behind this distinction is that a finder has completed all of the work that needs to be completed and the right to payment vests upon the finding of business, while a manufacturer's representative has continuing duties to service an account." *Id.*

Appellant argues that Respondent's duties placed him in the category of a manufacturer's representative as his duties went

> well beyond that of just selling airtime ... and included prospecting for new clients, servicing his accounts, continuous contact with his accounts, developing and changing advertising campaigns to fit the clients' needs, assisting in creating the radio commercials, helping with collections on his accounts, and overall constant maintenance of client accounts.

Appellant also cites Respondent's statement at trial that "[s]omeone had to call on those accounts" as further support for its claim. It argues that even though it was collecting money from clients for ads sold before Respondent was terminated, other employees of Appellant had to provide the same sort of services Respondent would have provided to clients after the sale, such as changing campaigns, dealing with problems, new creative processes, feedback, and collections.

Respondent argues that there was ample evidence to show that he had completed the necessary duties to earn the commissions at issue. He argues that although Appellant notes many of Respondent's servicing duties to his clients, "[a]ll of these job duties, with the exception of 'helping with collection on accounts'... are done before the advertising is aired." He also points out that the evidence

---

1. *Murphy* interpreted the provision of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2004).

showed that Respondent's accounts were good payers which rarely needed a collection call, that 99.7% of the amounts billed by Appellant on Respondent's accounts during the time at issue were collected, and that Boyd testified that he had no specific knowledge of collection actions taken on any of Respondent's accounts after his termination. He claims this shows an absence of any additional work which Respondent would have needed to collect on the accounts.

Appellant cites *J.S. DeWeese Co.*, 881 S.W.2d 638, 641–42; *Hogan v. NEC Ins., Inc.*, 848 S.W.2d 48, 50 (Mo.App. E.D. 1993); and *E.F. Higgins, Inc. v. Kuhlman Die Casting Co., Inc.*, 663 S.W.2d 318, 320 (Mo.App. E.D.1983), as examples of the types of duties that relegate an employee to manufacturer's representative status or a finder.

In *J.S. DeWeese Co.*, the respondent contracted with the appellant to act as the respondent's exclusive sales representative in a five state area. 881 S.W.2d at 641. The agreement provided that commissions were to be paid on the fifteenth day of the month for all "shipments paid" during the preceding month and allowed either party to terminate the agreement on thirty days notice. *Id.* at 642. The respondent terminated its contract with the appellant following a dispute regarding commissions on one of the appellant's accounts. *Id.* at 642. The appellant's suit was premised, in part, on breach of contract. *Id.* A summary judgment was granted in favor of the respondent on the appellant's claim that it was entitled to post-termination commissions. *Id.* In affirming, the appellate court found that the agreement was clear in providing for commissions only for "shipments paid" during the preceding month. *Id.* at 644. It also discussed the differences between a finder and manufacturer's representative, but based its decision on the factual evidence filed in support of the motion for summary judgment that included the testimony of appellant's agent which "clearly place[d] his duties as a sales manufacturer's representative within the realm of 'servicing' customers," and his admission that some of his duties continued after the commission was earned. *Id.* at 644–45. The court noted that in opposition to the motion for summary judgment, the appellant filed an affidavit of the same agent making conclusory statements regarding the lack of an obligation to provide some post-sale "servicing," but not all post-sale "servicing." *Id.* It found that the record did not support that appellant was a finder and therefore was not entitled to post-termination commissions. *Id.*

Appellant also cites *Hogan*, 848 S.W.2d at 49, where an insurance saleswoman was employed pursuant to a verbal agreement to act as a customer service representative for which she would be paid a salary plus 60% of the first year's premiums on new business. She was terminated and filed suit, claiming that she was entitled to commissions on insurance policies she had solicited, the premiums for which were due after her termination. *Id.* at 49. The trial court denied her claim, finding that she had no contractual right to collect the commissions after her termination. *Id.* at 50. It discussed the nature of the company's business, noting that there were "frequent client changes, cancellations, renewals with new insurers, and policy lapses through defaults," and that these factors weighed against paying of post-termination commissions because of the difficulty of calculation. *Id.* at 50. The appellate court, in affirming, found that apart from the contractual aspect, the trial court could have found that the saleswoman's work was more in the nature of a manufacturer's representative rather than a finder. *Id.* It noted that she was a customer service representative who performed "ministerial

functions concerning accounts" and pointed out that someone else had to perform these functions once she was terminated, that several of the accounts for which she claimed commissions were continuing accounts which she only serviced, that several accounts on which she claimed commissions were canceled or modified, and that follow-up service was performed on the accounts after she departed. *Id.*

We agree with Respondent that *Hogan* is distinguishable from the current case because of the substantial additional work necessary after the employee's termination to earn future commissions. *Id.* at 50. In this regard, it should be noted that in *Hogan,* entitlement to the commission for one year required the policies to remain in effect, which required servicing of those policies. *Id.* The claim there was not, as in this case, for commissions already earned prior to termination. Thus, here substantial additional work was not necessary to earn the commissions for the commercials which Appellant had already aired and was awaiting receipt of payment.

Appellant also cites *E.F. Higgins, Inc.,* 663 S.W.2d 318, as an example of a discussion of what constitutes a finder. There, E.F. Higgins, Co. ("Higgins") was a representative who sought die-casting contracts on behalf of Kuhlman Die Casting Co., Inc. ("Kuhlman"). *Id.* at 319. The parties had a contractual agreement dictating sales area, commissions, and servicing responsibilities as to accounts that required Higgins to contact and service its accounts on a regular basis in order to earn commissions. *Id.* at 319–320. There was evidence that the cost structure for the customer in the die-casting business is unique in that the initial order often becomes self-perpetuating as to reorders and could last for decades. *Id.* at 320. Kuhlman terminated Higgins in 1979 and voluntarily paid it commissions on orders billed six months after termination. *Id.* Higgins filed suit to recover commissions on reorders for castings for ten years following termination, seeking only to recover for casting reorders from customers it serviced when the original orders were developed. *Id.* The court discussed the distinction between a finder and manufacturer's representative, and found that "[i]t is at least arguable that the nature of [Higgins's] representation here more nearly approximated that of a 'finder' than of a true manufacturer's representative at least as it related to reorders of previously ordered castings." *Id.* at 320–321. It found in favor of Higgins, however, on the basis of the contract between the parties. *Id.*

In *E.F. Higgins, Inc.,* the court never determined whether Higgins was actually a finder, noting only that it was arguable that it was such. *Id.* at 321. It decided the case on the agreement between the parties, which consisted of several letters. *Id.* at 319–321.

We agree with the trial court that Respondent's position had elements of both a finder and a manufacturer's representative. The agreement here, albeit perhaps verbal, called only for a commission of eight percent on sales of advertising and did not have any provision regarding payment of commissions after termination. We note that Respondent had made these sales before he was terminated. The operative fact in this case is that, as to the commissions Respondent claims he is entitled, the only contingency remaining before the commission was due to be paid him was collection of the bills. The trial court found that Respondent's responsibilities in collection were minimal and not always necessary. There is ample testimony to support this finding. In this regard, we note the specific language from the test, discussed in both *J.S. DeWeese Co.* and *Hogan,* that "[t]he rationale be-

hind this distinction is that a finder has completed all of the work that needs to be completed and the right to payment vests upon the finding of business, while a manufacturer's representative has continuing duties to service an account." *J.S. DeWeese Co.,* 881 S.W.2d at 645; *Hogan,* 848 S.W.2d at 50.

An instructive case is *Slusher v. Mid-America Broadcasting, Inc.,* 811 S.W.2d 443 (Mo.App. S.D.1991), which both parties cite. There, a television station terminated one of its employees who sold advertising. *Id.* Prior to termination, the employee had sold ads that were to air for the following three months and he claimed that he was entitled to commissions on this advertising which aired after his discharge. *Id.* The employee worked under a contract with the employer, however, which stated,

> [i]t is agreed because of the nature of the Television advertising business and the necessity of continual and frequent service required by advertisers after they contract to purchase advertising time in order to complete the sale, commissions will be paid only while salesperson is employed in that capacity by [respondent's television station].

*Id.* at 444. The employee was paid commissions on all of his accounts whose commercials aired prior to his discharge, but not on those that aired afterwards. *Id.* The court found that the trial court could have determined that the employee's continuing service was necessary during the life of the advertising contract because there was evidence that an advertising salesman was required to supervise the contract made with the advertisers from the time the order was placed until the contract was fully performed. *Id.* at 444–45. The court went on to discuss the law, stating,

> [t]he general principle of law which governs the merits of this appeal is that even when a discharge from employment is proper, an employer has no right to refuse to pay the employee for services rendered up to the time of discharge, unless the employee agrees by contract or written waiver to a different amount. Otherwise put, the rule is that a person employed to solicit sales orders on a commission basis is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. This general rule may be altered by a written agreement by the parties or by conduct of the parties which clearly demonstrates a different compensation scheme.

*Id.* at 445–46 (internal citations omitted). The court found, however, that the contract between the employer and the employee was unambiguous in providing that commissions would only be paid while the employee remained employed, therefore, the employee was entitled to no post-termination commissions. *Id.* at 446–47.

Unlike *Slusher,* here there was no contractual limitation on the payment of commissions. While the *Slusher* court did not discuss whether the employee was a finder or a manufacturer's representative, the principles of law discussed by the court support Respondent's claim here. *Slusher* does not support Appellant's contention that it does not have to pay post-termination commissions on commercials sold and run before Respondent's termination.

The facts of this case demonstrate that virtually all of Respondent's responsibilities necessary to earn the commissions for the commercials at issue were complete and the only remaining contingency for payment of his commissions was receipt of payment for the commercials by Appellant. There was evidence to support the trial

court's conclusion that any work necessary to actually collect the bills would have been minimal. We therefore find that the trial court did not err in finding in favor of Respondent. We affirm its judgment.

PREWITT, J., and RAHMEYER, J.,- concur.