KNOX COUNTY COURT, Respondent,

v.

Ward **BENSON**, Jr., et al., Appellants.

No. **49510.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Dec. 10, 1985.
Rehearing Denied March 19, 1986.

Gary L. Dial, Memphis, for appellants.

William E. Alberty, Edina, for respondent.

REINHARD, Judge.

Plaintiff sued for specific performance of a contract to maintain bridges on a county line road. Defendants appeal from a judgment in favor of plaintiff. We reverse.

Knox County adjoins Scotland County and the present litigation involves a 5½ mile segment of road that lies on the county line which separates the two. On March 5, 1951, the Judges of the two County Courts entered into and signed the following written agreement:

At a joint meeting of the Scotland County Court and the Knox County Court, it was agreed that the Scotland County Court maintain bridges on the Scotland—Knox County line, except those in the Greensburg Special Road District. It was further agreed that the Knox County Court maintain roads on the Scotland—Knox County Line except those in the Greensburg Special Road District.

On March 6, 1972, according to the Knox County Court minutes, the Judges of the Scotland County and Knox County Courts met "concerning the County Line Roads between the two counties" and "decided to let stand a previous Agreement ... dated March 5, 1951." The Scotland County Court Record entry for March 6, 1972, stated that "[t]he Court renewed the agreement with Knox County concerning the [county] line roads and bridges" and recited the 1951 agreement in full.

The minutes of the Scotland County Court meeting on March 15, 1983, read, in pertinent part, as follows:

All three County Court Judges voted to rescind agreement with Knox County Court dated March 5, 1951. Scotland County has rocked the first two miles east of Highway 15 and maintained it with road graders. Scotland County has put 300 ton to the mile and not 43 ton as Knox County has done in the past. We have rocked roads in Greensburg Road District because Greensburg does not get enough money from Knox County to keep their roads in condition. We no longer have an agreement. If Knox County wants an agreement the Scotland County Court will meet with them at their convenience. If not, let the road go to hell ...

The June 16, 1983, minutes of the Scotland County Court state that:

Gary Dial presented Court a letter he received from William E. Alberty, Prosecuting Attorney of Knox County, concerning bridges on Knox, Scotland County Road. This letter refers to agreement between counties that was drawn up and signed March 5, 1951. This agreement is contrary to § 228.140, RSMo 1978, and is no longer accepted by Scotland County. (sic)

On October 18, 1983, Knox County filed a petition for specific performance of the 1951 agreement, naming as defendants Scotland County and the Judges of the Scotland County Court. Knox County alleged in the petition that it had performed "all of its duties and responsibilities in accordance with the terms and provisions of the agreement ... but the Defendants ... have failed and refused to maintain the bridges on the Scotland—Knox County Line as agreed to, and continue to fail and refuse to maintain said bridges...." It further alleged "that certain bridges on the Scotland—Knox County Line are badly in need of repair and that some of them are wholly unusable at the present time." Asserting that it had no adequate remedy at law, Knox County asked the trial court to

declare a breach and order specific performance of the agreement. After a court trial, the court found for plaintiff and ordered that the contract be specifically performed within a reasonable time.

There was clearly sufficient evidence to support a finding that Knox County had fulfilled its obligations under the agreement. In addition, the evidence revealed that at least four of the six bridges included in the agreement were impassible, and that the cost of replacement or repair would exceed $400,000. However, Presiding Judge Benson of the Scotland County Court testified that federal funding would cover eighty percent of the replacement cost.

On appeal, as in the trial court, the defendants contend that the contract is unenforceable because: 1) it is in violation of §§ 228.140 and 432.070, RSMo 1978; 2) it lacks consideration; and 3) it is an "unconscionable bargain." They also contend that the contract was terminable at will by either party, and that they terminated the agreement on March 15, 1983.

Several statutory provisions are relevant to our present inquiry. First, § 70.220, RSMo 1978 provides:

Any ... political subdivision of this state ... may contract and cooperate with any other municipality or political subdivision ... for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; provided that the subject and purposes of any such contract or cooperative action made and entered into ... shall be within the scope of the powers of such ... political subdivision. If such contract or cooperative action shall be entered into ... said contract or cooperative action must be approved by the governing body of the unit of government....

Section 228.140, cited by defendants, provides:

The county courts of the several counties in this state shall have the authority to establish highways on the boundary lines of their respective counties ... each county shall provide one-half of the cost of establishing and keeping in repair such road.

Defendants also rely on § 432.070, which states that:

No county ... shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

■ Neither party challenges the establishment of the county line road. The agreement concerning repair and maintenance was, in our opinion, a practical exercise of the contract power authorized under § 70.220. It was executed in order to divide fairly the responsibility of maintaining the road as required by § 228.140. It is improbable that either county, at the time of execution, believed that it was agreeing to provide a greater portion of the maintenance costs than the other. A conclusion that § 228.140 prohibits such agreements would defy logic. We also conclude that the contract was properly executed and approved by the respective governing bodies of the two counties. It contains mutual obligations and is, therefore, supported by consideration.

■ We next consider the absence of a termination date. Nothing in the agreement expressly, or by implication, establishes a limitation on the contract's duration. It has been repeatedly held that "[a] contract for an indefinite period of time may be terminated at the will of either party." *Sharp v. W. & W. Trucking Co.*, 421 S.W.2d 213, 218 (Mo. banc 1967). The only requirement is that the terminating party give reasonable notice. *Clarkson v. Standard Brass Mfg. Co.*, 170 S.W.2d 407, 415 (Mo.App.1943). Here two public bodies entered into a reasonable and logical agree-

ment in 1951, which was officially reviewed and reaffirmed in 1972. However, in 1983 the Scotland County Court determined that the contract was no longer in the best interest of the citizens of that county. Since it was a contract at will, defendants could and did terminate it in March 1983.[1] Under these circumstances there was no basis for requiring specific performance and the trial court erred in ordering such.

Judgment reversed.

DOWD, P.J., and CRIST, J., concur.

1. The record indicates that Knox County had notice of Scotland County's termination of the contract. Indeed, Knox County does not contend otherwise.