Anne ALBERS, Bonnie Becker, Maureen Betts, Pat Coughlin, Mary Delong, Lisa Doren, Connie Dwyers, Jan Evers, Jane Fetick, Mary Beth Foerstel, Lynn Hauver, Margaret Hennessy, Deborah Huhman, Joanne Jetensky, Ruth Johnson, Maddona Marshall, Margaret Seidl, Fran Soto, and Jan Wodicker, Plaintiffs-Appellants,

v.

**CARDINAL GLENNON CHILDREN'S HOSPITAL, f/k/a Cardinal Glennon Memorial Hospital for Children,**

and

**Douglas Reis, Defendants-Respondents.**

**No. 51590.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 24, 1987.

Motion for Rehearing and/or Transfer
Denied April 29, 1987.

Application to Transfer Denied
June 16, 1987.

David M. Duree, St. Louis, for plaintiffs-appellants.

Ralph Edwards, St. Louis, for defendants-respondents.

DOWD, Judge.

Plaintiffs appeal after the dismissal of their first amended petition, with prejudice, for failure to state a claim upon which relief can be granted. We affirm.

Plaintiffs-appellants are nineteen nurses who have worked for defendant hospital in excess of ten years. As of January 2, 1986, the date of their first amended petition, plaintiffs were all still employed by defendant hospital.

Plaintiffs have challenged the hospital's discontinuation of a wage and scheduling program. Under the "7 for 10 program," nurses on the night shift worked seven nights during a two-week period but were compensated as if they had worked ten nights.

In their five count petition, plaintiffs attempted to allege causes of action for: 1) breach of contract, 2) breach of contract with additional consideration, 3) equitable or promissory estoppel, 4) fraud, and 5) tortious interference with contractual relations. The trial court dismissed all five counts of plaintiffs' petition with prejudice.

In reviewing the trial court's dismissal of plaintiffs' petition for failure to state a claim upon which relief can be granted, we must determine whether the averments invoke principles of substantive law entitling plaintiffs to relief. *Lowrey v. Horvath*, 689 S.W.2d 625, 626 (Mo. banc 1985). In so doing, the pleading is allowed its broadest intendment, all facts alleged are treated as true, and all allegations are construed favorably to plaintiffs. *Id.* A motion to dismiss, however, "is well taken where the petition fails to plead the essential facts for a recovery." *Reinhold v. Fee Fee Trunk Sewer, Inc.*, 664 S.W.2d 599, 603 (Mo.App. 1984), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984).

In Count I, plaintiffs alleged that they "were and are all employed as nurses for ten years or more at Cardinal Glennon Children's Hospital," and that the hospital "is a not-for-profit institution." They further averred that:

3. In the early 1970's the Hospital faced a severe shortage of nurses on its night shift. In order to staff its night shift, the Hospital offered to compensate any nurse who worked seven nights in a two week pay period compensation as if they had worked ten days. In further inducement to the Nurses, the Hospital promised the Nurses who participated in this program that such program would be available to the nurse for so long as she was employed by the Hospital. ("7 for 10 program").

4. The custom and practices, policies, procedures, and employee handbook of the Hospital, taken collectively, define "Termination of Employment" as retirement, resignation, or discharge. Employment at the Hospital is not terminated by leaves of absence, sick leave, vacation, administrative leave, educational leave, medical leave, military leave, personal leave, working part-time, or other changes in employment status which do not constitute retirement, resignation, or discharge.

5. The custom and practices, policies, procedures, and employee handbook, taken collectively, only allow the Hospital to discharge the Nurses for "cause" and after following certain procedural steps. The provisions of the Hospital's Employee Handbook regarding the Code of Conduct and Termination of Employment are attached hereto as Appendix A and incorporated by reference.

6. The Nurses all qualified for the 7 for 10 program, they accepted the 7 for 10 offer by participating in the program, and they otherwise met all conditions precedent to participating in the 7 for 10 program, and they are willing, ready and able to continue participating in such program.

7. On or after March 11, 1985, the Hospital notified the Nurses that the Hospital unilaterally decided to terminate the 7 for 10 program on April 15, 1985 and did in fact terminate the 7 for 10 program on such date.

8. Such termination constituted a breach of the 7 for 10 contract.

9. As a proximate cause of such breach of contract, Plaintiffs have suffered wage loss, decreased insurance benefits, decreased retirement benefits, physical hardship, family hardship, emotional distress and other hardships, in the amount $250,000.00 for each nurse.

In Count II, plaintiffs incorporate by reference the averments of Count I and further aver they gave consideration, additional and independent of providing nursing services, to the hospital. In Count II, plaintiffs contend forbearance from accepting other employment, resigning from other employment, the structuring of their lives around the "7 for 10 program," and the hardships associated with working nights, provide such independent and additional consideration.

Plaintiffs contend the trial court erred in dismissing Count I and II because their

petition, when viewed in the light most favorable to plaintiffs, invokes principles of substantive law indicating the existence and breach of an enforceable contract. Plaintiffs contend reference to custom and practice and an employee handbook has defined the term "for so long as the nurses are employed by the hospital" as discharge, resignation, or retirement and thereby avers a contract of definite duration. Plaintiffs further contend they gave the hospital additional and independent consideration which prevents the contract from being terminable at will.

The portion of the handbook attached as an appendix to the petition has a page entitled "Code of Conduct" which enumerates a list of "serious [code] violations." At the bottom of the page it states: "Disciplinary action may be assessed for these violations—up to and including discharge." Two additional pages are incorporated, entitled "Discipline" and "Termination of Employment". Under the "Termination of Employment" heading appear the subtitles "Retirement," "Resignation," "Discharge," "Exit Interview," and "Re-Employment." In the paragraph labeled "Discharge" the handbook states: "The Hospital management reserves the right to dismiss an employee without notice for any major infraction of the Code of Conduct or a violation of the Code during the probationary period." Nowhere does the appended portion of the handbook mention the "7 for 10 program."

Plaintiffs have failed to plead a valid, definite and enforceable contract. We find the handbook irrelevant to determining the duration of the "7 for 10 program" and conclude the custom and practice of the hospital averred to is consistent with an interpretation that the program would last indefinitely and could be unilaterally discontinued. We further conclude that plaintiffs' contract with the hospital was not based upon anything other than the mutual promises of employment and services to be rendered.

Whether the terms of an agreement are ambiguous is a question of law for the court. *Mal Spinrad of St. Louis, Inc., v.*

*Karman, Inc.,* 690 S.W.2d 460, 464 (Mo. App.1985). Where no ambiguity exists, the intention of the parties is to be gathered from the contract alone, not from a resort to extrinsic evidence. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973).

The general rule for the duration of contracts of indefinite duration, which by their nature are not deemed to be perpetual, is that they may be terminated at the will of either party upon the giving of the required notice. *Clarkson v. Standard Brass Mfg. Co.,* 237 Mo.App. 1018, 170 S.W.2d 407, 415 (1943); *Knox County Court v. Benson,* 706 S.W.2d 215, 217 (Mo. App.1985). A contract will not be construed to impose an obligation or confer a right in perpetuity unless the language of the contract "compels" such a construction. *Superior Concrete Accessories v. Kemper,* 314 Mo. 288, 284 S.W.2d 482, 490 (1955). Before an employment contract will be construed to be perpetual, there must exist an additional consideration besides "the services rendered during the current time of the employment." *Minter v. Tootle-Campbell Dry Goods Co.,* 187 Mo.App. 16, 173 S.W. 4, 8 (1915); *see also, Fullington v. Ozark Poultry Supply Co.,* 327 Mo. 1167, 39 S.W.2d 780, 783 (Mo.1931).

We do not find a general statement of indefiniteness, "for as long as you are employed by the hospital" to create an ambiguity. Construing the petition as we must under the substantive law, the agreement as averred by plaintiffs provides nothing more than that the program was to last indefinitely and that the nurses could participate in the program so long as they were employed by the hospital and provided the hospital chose to continue the program.

This court has previously stated in *Arie v. Intertherm,* 648 S.W.2d 142, 153 (Mo. App.1983), and *Gavan v. Madison Memorial Hospital,* 700 S.W.2d 124, 127 (Mo.App. 1985), that as to termination of an employee, a handbook containing policy statements of the employer and rules of employment create contractual rights in the employee even without evidence of mutual

agreement to this effect and despite the fact that the statement of policy is not signed by the parties and could be amended unilaterally by the employer. Here, however, the handbook makes no mention of the "7 for 10 program." We do not find it necessary to resort to extrinsic evidence, nor do we find the handbook provision on "Termination of Employment" to be relevant, in determining the duration of the wage and scheduling program. If this were an action for wrongful discharge, plaintiffs petition averring rights from the handbook would likely survive a motion to dismiss. The "7 for 10 program," however, has nothing to do with the circumstances under which an employee may be terminated.

Likewise, the custom and practice of the hospital as averred by plaintiffs supports the construction that the hospital could unilaterally change or discontinue the program. Plaintiffs allege the hospital made periodic interpretations of the program and changed eligibility requirements but do not contend the hospital bargained with them over such issues.

In the absence of some valid, additional legal consideration exchanged for the asserted continuous nature of the employment, the conditions of the employment may be changed at will of the employer upon the giving of reasonable notice. Plaintiffs petition avers nothing more than consideration consistent with services rendered and for which plaintiffs were compensated.

We do not construe a general statement of indefiniteness to require the employees be terminated before the hospital can effectuate a change in wages and scheduling. The petition, as we construe it, has averred nothing more than that the program would last indefinitely and could therefore be discontinued unilaterally. We affirm the dismissal of Counts I and II.

■ While plaintiffs strongly argue that they have pled a cause of action in equitable or promissory estoppel in Count III,

we conclude, without going into unnecessary detail, that the pleading is insufficient to state a claim under either theory. Although the averments in Count I regarding the employee handbook are incorporated by reference in Count III, nowhere in the petition do plaintiffs aver that they were promised that the policies in the handbook would not be modified. They do not allege that they took any action in reliance on the handbook, or that the handbook was in existence when they became participants in the 7 for 10 program. Thus, plaintiffs have merely alleged reliance on a promise that the program would last indefinitely. Count III was properly dismissed.

■ In Count IV, plaintiffs attempt to set forth a cause of action for fraud. Supreme Court Rule 55.15 provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and any other condition of mind of a person may be averred generally.

We need not recite in detail the contents of Count IV; it is sufficient to note that it contains only conclusions. In particular, no factual allegations are made concerning the circumstances surrounding the alleged representations made by "the Hospital." Rule 55.05 provides that a petition shall contain "a short and plain statement of the *facts* showing that the pleader is entitled to relief." (Emphasis added.) As was noted in *Tolliver v. Standard Oil Co.,* 431 S.W.2d 159, 162 (Mo.1968): "Mere conclusions of the pleader not supported by factual allegations cannot be taken as true and must be disregarded in determining whether a petition states a claim on which relief can be granted." Count IV was properly dismissed for failure to state a claim.

■ Plaintiffs' Count V,[1] and in particular paragraph four, is also devoid of factual allegations supporting the averments. Plaintiffs' pleading is at least as deficient as the one dismissed in *Freidman v. Edward L. Bakewell, Inc.,* 654 S.W.2d 367

---

1. In Count V, plaintiffs seek judgment against only Douglas Reis, the Executive Director of the hospital.

**524**

(Mo.App.1983), which also involved a claim of tortious interference with a business expectancy.

The judgment of the trial court is affirmed.

SMITH, P.J., and REINHARD, J., concur.