**HASTINGS & CHIVETTA ARCHITECTS, Appellant/ Cross–Respondent,**

v.

**Stephen K. BURCH, Respondent/Cross–Appellant.**

**Nos. 56810, 56837.**

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 7, 1990.

Armstrong, Teasdale, Schlafly, Davis & Dicus, John F. Cowling and Andrew B. Mayfield, St. Louis, Mo., for appellant/ cross-respondent.

Susman, Schermer, Rimmel & Shifrin, David G. Dempsey and Randall Kahn, St. Louis, Mo., for respondent/cross-appellant.

KAROHL, Judge.

Plaintiff appeals judgment for defendant notwithstanding the verdict and trial court's grant of a new trial in the alternative. The jury awarded plaintiff architect $33,000 for breach of an architectural services contract. It also found for defendant on his counterclaim for conversion but awarded no damages. Defendant cross-appeals from denial of his motion for a new trial on the issue of damages on his counterclaim. The counterclaim was based upon plaintiff's refusal to return schematic drawings defendant furnished to plaintiff.

In July, 1980, defendant Stephen K. Burch entered into a contract with plaintiff Hastings & Chivetta Architects, Inc. for architectural services for construction of an office building. Defendant provided plaintiff with schematic drawings prepared by another architect, Mr. Chih–Chen Jen.

Plaintiff used these schematics to prepare the rest of their drawings. Article 15.1 of the contract stated these drawings were not a part of the contract. Further, the contract provided that plaintiff was to complete the remaining four phases: (1) design development; (2) construction documents; (3) bidding; and, (4) administration of construction.

Article 14.2 set plaintiff's fees at 4.7% of the construction cost of the project, estimated at $4,125,000. Plaintiff was entitled under Article 14.2.2 to 35% of this fee at completion of the design development phase. The contract contained two other sections concerning payment schedule which are central to the present dispute, one printed and the other typewritten. The printed section, Article 10.3, originally read: "In the event of termination not the fault of the Architect, the Architect shall be compensated for all services performed to termination date, together with Reimbursable Expenses then due and all Termination Expenses as defined in Paragraph 10.4." However, the phrase "and all Termination Expenses as defined in Paragraph 10.4" was deleted along with all of Article 10.4 at defendant's request before the contract was signed.

Defendant also requested the addition of typewritten sections including Article 15.4 which provided:

It is understood and agreed that the payment of *any* compensation and expenses shall be conditional upon Owner obtaining the following:

(a) from bond counsel selected by Owner, an unqualified opinion that the interest on the industrial revenue bonds proposed to be issued by the City of Clayton, Industrial Development Authority or the Industrial Development Authority of the County of St. Louis, Missouri will be exempt from taxation under the Internal Revenue Code.

(b) from the City of Clayton, Industrial Development Authority or the Indus-

trial Development Authority of the County of St. Louis, Missouri, a resolution approving Owner's application for the issuance of industrial revenue bonds under Chapter 349 of the Revised Statutes of the County of St. Louis, Missouri will issue its bonds to finance the acquisition and construction of the project described in the application.

(c) from the governing body of the City of Clayton, approval of the location as an industrial development project pursuant to the Provisions of Section 349.010 of the Revised Statutes of Missouri.

Plaintiff began major work on the design development drawings in October, 1980. On July 27, 1983 defendant sent a letter to plaintiff stating that because industrial revenue financing had been unobtainable, he had decided to terminate the contract; therefore, pursuant to Article 15.4, no compensation or expenses were due plaintiff. Plaintiff's president, Bryce Hastings, testified the value of plaintiff's services for work performed on the project was approximately $60,000.

In April, 1986, plaintiff sued alleging breach of contract. Count II claimed quantum meruit damages. Defendant filed a counterclaim against plaintiff alleging conversion based on plaintiff's refusal to return the schematic drawings prepared by Jen.

At the close of plaintiff's case and again at the close of all evidence, defendant moved for a directed verdict asserting plaintiff failed to prove Article 15.4(a) was satisfied or that nonperformance was excused. Both motions were denied. Plaintiff withdrew its quantum meruit claim before the case was submitted to the jury.

The jury entered its verdict for plaintiff on the breach of contract claim against defendant and awarded plaintiff $33,000.[1] Conversely, the jury found for defendant on his counterclaim against plaintiff but awarded him no damages. Defendant filed

**1.** Defendant claims this sum represents the difference between the amount claimed by plain-

tiff and the amount sought in the counterclaim.

a motion for judgment notwithstanding the verdict, or in the alternative a new trial on plaintiff's claim. Defendant also sought a new trial on the issue of damages on his counterclaim against plaintiff. The trial court granted defendant's motion for judgment notwithstanding the verdict and in the alternative a new trial on plaintiff's claim, but denied the motion for a new trial on defendant's counterclaim.

■ When reviewing a judgment for defendant notwithstanding the verdict, "The evidence is viewed in the light most favorable to the plaintiff and plaintiff is given the benefit of reasonable inferences to be drawn therefrom." *Dominick v. Sears, Roebuck & Co.*, 741 S.W.2d 290, 292–293 (Mo.App.1987), citing *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 121 (Mo. banc 1983). However, "the evidence supporting the verdict must be substantial." *Smith v. R.B. Jones of St. Louis, Inc.*, 672 S.W.2d 185, 186 (Mo.App.1984). A plaintiff "is bound by the uncontradicted testimony of [its] own witnesses." *Dominick*, 741 S.W.2d at 293. Also, an appellate court can affirm provided the action of the trial court is supported by one of the grounds raised in the motion. *Id.; see also, Goodenough v. Deaconess Hospital*, 637 S.W.2d 123, 125 (Mo.App.1982).

■ The only ground submitted to the trial court on defendant's motion for judgment notwithstanding the verdict was plaintiff's failure to allege the conditions precedent to compensation under the contract and its failure to introduce any evidence at trial that one of the conditions precedent, Article 15.4(a), was met or that defendant caused or prevented Article 15.-4(a) from being met. The above justification must support the judgment notwithstanding the verdict or reversal is mandatory. If the conditions in Article 15.4 are conditions precedent, "a party suing for breach of contract must allege and prove performance of all conditions precedent, or he must allege and prove an excuse for their nonperformance." *Gillis v. New Horizon Development Co., Inc.*, 664 S.W.2d 578, 580 (Mo.App.1983) (citations omitted).

Plaintiff asserts a patent ambiguity exists between Article 10.3 and Article 15.4, and attempts to resolve this ambiguity by asserting the three conditions in Article 15.4 are not conditions precedent. Instead, plaintiff interprets those sections to mean payment was to be made under Article 10.3 unless the project failed for one of the three reasons listed in Article 15.4.

"Conditions precedent are disfavored and contract provisions are construed as such only if unambiguous language so requires or they arise by necessary implication." *Id.* quoting *Juengel Construction Co., Inc. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 513 (Mo.App.1981). Whether a contract is ambiguous is a question of law for the court. *Jim Carlson Construction, Inc. v. Bailey*, 769 S.W.2d 480 (Mo.App.1989); *Republic National Life Insurance Company v. Missouri State Bank and Trust Company*, 661 S.W.2d 803 (Mo.App.1983). The language of a contract is deemed ambiguous where it is susceptible to more than one meaning and where reasonable men may fairly differ as to what that meaning is, but ambiguity does not arise merely because parties disagree on how the contract is to be construed. *Ridley v. Newsome*, 754 S.W.2d 912, 914 (Mo.App.1988). In examining a contract to determine whether there is ambiguity, language used will be given its usual and ordinary meaning. *Satterfield v. Layton*, 669 S.W.2d 287, 288 (Mo. App.1984).

Article 15.4 was a typewritten section added to a printed form contract. Conspicuously, the word "any" was underscored. The phrase "It is understood and agreed that the payment of *any* compensation and expenses shall be conditional upon owner obtaining the following:" was followed by three conditions. The usual and ordinary meaning of the contract, taken as a whole, required no compensation to plaintiff unless and until all three conditions were satisfied. Both parties agree all the conditions in Article 15.4(a) have never been met. Therefore, plaintiff did not make a submissible case unless he provided some evidence that an unsatisfied condition was excused.

Plaintiff claims satisfaction should be excused because defendant acted in bad faith amounting to anticipatory breach of the contract. Defendant sought industrial revenue financing unsuccessfully for a period of three years, and nothing in the contract obligated defendant to pursue financing indefinitely. "A contract will not be construed to impose an obligation or confer a right in perpetuity unless the language of the contract 'compels' such a construction." *Albers v. Cardinal Glennon Children's Hospital,* 729 S.W.2d 519, 522 (Mo.App. 1987) citing *Superior Concrete Accessories v. Kemper,* 284 S.W.2d 482, 490 (Mo.1955). "[T]he law implies a reasonable time to perform where no time limit is fixed by contract." *Artcraft Cabinet, Inc. v. Watajo, Inc.,* 540 S.W.2d 918, 925 (Mo.App.1976). Three years is a reasonable period of time. No evidence was produced showing defendant affirmatively avoided an obligation to obtain anticipated financing or in any way kept Article 15.4(a) from being satisfied.

We find no ambiguity between Article 15.4 and Article 10.3. The condition precedent in 15.4(a) was not satisfied, and was not excused, therefore, the trial court did not err when it sustained defendant's motion for judgment notwithstanding the verdict.

■ The remaining issue is defendant's claim the court erred in denying a new trial on his counterclaim for conversion damages. A trial court's order denying a motion for new trial may not be overturned on appeal unless the movant can show the trial court abused its discretion. *State ex rel. Missouri Highway and Transportation Commission v. Johnson,* 658 S.W.2d 900, 906 (Mo.App.1983).

Defendant submitted the following damages instruction on his counterclaim:

Instruction No. 11

If you find in favor of Defendant on its counterclaim against Plaintiff, then you must award Defendant such sum as you believe represents the fair market value of the schematic drawings at the time Plaintiff failed to return them.

The phrase "fair market value" as used in this instruction means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so.

There was substantial evidence to support a finding that the fair market value of the schematic drawings was zero at the time plaintiff refused to return them. Chih–Chen Jen, the architect who prepared the drawings, testified he was obligated to create a new design for the project because ethically he could not duplicate the original design. From the evidence adduced at trial a jury could reasonably conclude the schematic drawings created by Mr. Jen in 1980 could not be reused and, therefore, had no market value. The jury's award of zero damages was not inconsistent with its verdict nor was it against the weight of the evidence. Accordingly, we find the trial court did not abuse its discretion when it denied a new trial on the issue of damages.

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.