**Seth C. PASKON, M.D.,**
**Plaintiff–Appellant,**

**v.**

**SALEM MEMORIAL HOSPITAL DIS-TRICT; George Bay, Judy Thompson, Gary Plank, Jim Hocker, Fern Highley and Dennis Fiebelman, as the Directors of the Salem Memorial Hospital District; Judy Thompson, Gary Plank and John Demorlis, M.D., as Members of a Purported Hearing Committee of the Salem Memorial Hospital District; and**

**John Demorlis, M.D., Ted C. Tang, M.D., and Charles Cunningham, D.O., as the Members of the Executive Committee of the Medical Staff of the Salem Memorial Hospital District, Defendants–Respondents.**

**No. 16879.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 28, 1991.

Motion for Rehearing or to Transfer to Supreme Court Denied March 11, 1991.

Application to Transfer Denied
May 3, 1991.

Austin L. Mitchell, Salem, P. Terence Crebs, Charles B. Kaiser, III, Caruthers, Herzog, Crebs & McGhee, St. Louis, for plaintiff-appellant.

David G. Neal, Neal & Oberzalek Law Firm, Eminence, for defendants-respondents.

MAUS, Presiding Judge.

The defendants in this declaratory action are Salem Memorial Hospital District (District), members of the Board of Directors of the District (Board), members of the "hearing committee" of the Board, and members of the executive committee of the medical staff of the District hospital. On February 27, 1989, the Board of Directors suspended plaintiff Seth C. Paskon, M.D., as an active member of the medical staff of the District's hospital "for his failure to have a current and valid federal narcotics license." By Count I, the plaintiff first seeks a declaration that he was not effectively suspended "because the motion and vote taken to so suspend the plaintiff was done while the board of directors ... was in executive session in violation of RSMo 610.015 (1986)" and because the bylaws of the medical staff authorized the Executive Committee of the Board but not the entire Board to summarily suspend such privileges. In the alternative, in the event such relief is denied, the plaintiff seeks a declaration that he should be afforded a hearing by the executive committee of the hospital's medical staff as provided by Article VII, Section II b. of the "Medical Staff Bylaws". By Count II, the plaintiff seeks an order compelling the executive commit-

tee of the medical staff to hold such a hearing.

The trial court found that, at the time of the suspension, the plaintiff had been placed on probation by the Missouri Board of Registration for the Healing Arts and that under the bylaws of the medical staff, that action automatically suspended all of the plaintiff's hospital privileges. The trial court further found that the Board of Directors merely formalized that automatic suspension and that the plaintiff was not entitled to a hearing. In response to an argument of the plaintiff, the trial court found that the Board may temporarily suspend a member of the medical staff under the provisions of Article VII, Section II a. Finally, the trial court found that because plaintiff was required to perform emergency room services for compensation paid by the District, he was an "employee" of the District within the meaning of § 610.021 and the Board was permitted to take the action that it did in a closed session. The plaintiff appeals. The following is an outline of the relevant statutes, bylaws and facts.

By statute, the District acts through and is governed by its Board of Directors. § 206.100. The organization of the Board and its powers are also defined by statute. *Id.* The bylaws adopted by the Board include the following provision for an Executive Committee:

## "ARTICLE V

### COMMITTEES OF THE BOARD OF DIRECTORS

* * * * * *

2. The Executive Committee shall consist of the Chairman, Vice–Chairman, and Secretary of the Board of Directors. The Executive Committee shall have power to transact all regular business of the hospital during the interim between the Meetings of the Board of Directors, except as limited by these bylaws or by the specific instructions of the Board of Directors. The Executive Committee shall report at the next Board of Directors meeting all actions taken by said committee, for ratification by the Board of Directors; said actions shall be recorded in the minutes of the Board of Directors."

* * * * * *

The organization of the professional staff and control of who may practice in the hospital is also governed by statute.

"The professional staff of the hospital shall be an organized group which shall initiate and, with the approval of the board, adopt bylaws, rules, regulations, and policies governing professional activities in the hospital. General practitioners may practice in the hospital in accordance with their competence as recommended by the professional staff and as authorized by the board." § 206.105.2.

The professional medical staff of the hospital has adopted, and amended from time to time, comprehensive and detailed bylaws. Those bylaws include provisions prescribing the organization of the medical staff, the qualifications required of those permitted to practice in the hospital, and the procedure for the initial appointment and the required annual reappointment to the medical staff. Those bylaws require for appointment and reappointment to the active medical staff "proof of BNDD license number, State of Missouri, and federal narcotic license number and that it is current."

The bylaws also contain a series of provisions concerning the evaluation of services provided by members of the professional staff and for the termination or suspension of privileges to practice in the hospital. Article VII, Section I, of the Medical Staff Bylaws provides for "Procedure" for corrective action whenever the professional conduct of any practitioner is considered lower than the standards of the medical staff, or disruptive to the operations of the hospital. Article VII, Section II, deals with "Summary Suspension" of the privileges of a practitioner. The provisions of "SECTION II. *SUMMARY SUSPENSION*", include the following:

"a. Any one of the following—chairman of the executive committee, the president of the medical staff, the chief

executive officer, the executive committee of either the medical staff or the governing body—shall each have the authority, whenever action must be taken immediately in the best interest of patient care in the hospital, to summarily suspend all or any portion of the clinical privileges of a practitioner, and each summary suspension shall become effective immediately upon imposition.

b. A practitioner whose clinical privileges have been summarily suspended shall be entitled to request that the executive committee of the medical staff hold a hearing on the matter within such reasonable time period thereafter as the executive committee may be convened in accordance with Article VIII of these bylaws."

Article VII, Section III, "AUTOMATIC SUSPENSION" provides:

"a. Action by the State Board of Medical Examiners revoking or suspending a practitioner's license, or placing him upon probation, shall automatically suspend all of his hospital privileges."

\* \* \* \* \* \*

Article VIII deals with "Hearing and Appellate Review Procedure". The substantive provisions of that article defining the right to and procedure for review are as follows:

"SECTION I.   RIGHT TO HEARING AND APPELLATE REVIEW

a. When any practitioner receives notice of a recommendation of the executive committee that, if ratified by decision of the governing body, will adversely affect his appointment to or status as a member of the medical staff or his exercise of clinical privileges, he shall be entitled to a hearing before an ad hoc committee of the medical staff. If the recommendation of the executive committee following such hearing is still adverse to the affected practitioner, he shall then be entitled to an appellate review by the governing body before the governing body makes a final decision on the matter.

b. When any practitioner receives notice of a decision by the governing body that will affect his appointment to or status as a member of the medical staff or his exercise of clinical privileges, and such decision is not based on prior adverse recommendation by the executive committee of the medical staff with respect to which he was entitled to a hearing and appellate review, he shall be entitled to a hearing by a committee appointed by the governing body, and if such hearing does not result in a favorable recommendation, to an appellate review by the governing body, before the governing body makes a final decision on the matter."

Subsequent sections contain detailed provisions concerning the procedure and necessity of a request for a hearing and the conduct of such a hearing.

Plaintiff first became a member of the active medical staff of the hospital in 1974. On April 1, 1988, the plaintiff and the Missouri Board of Registration for the Healing Arts entered into an agreement that placed the plaintiff's license to practice medicine on probation from September 12, 1987 to September 11, 1990.

The plaintiff's application for his 1989 reappointment to the active medical staff was first considered by the "credentials committee" of the medical staff on January 16, 1989. That committee noted that the plaintiff did not have a federal narcotics license for 1989. A member of the committee was designated to contact the plaintiff concerning that deficiency. This was followed on January 16, 1989 by a meeting of the medical staff. The minutes of that meeting include the following:

"Dr. Demorlis reported that the medical staff executive committee had met and reviewed reappointment documentation for all staff physicians. All were approved *pending receipt* [of] copies *of federal licenses for ... Paskon.* A motion was made by Dr. Carnett and seconded by Dr. Farquhar to approve the following for active, medico-administra-

tive, and courtesy staff:". (Emphasis added.)

The plaintiff was included in the list of doctors so approved for the active staff. At its regular meeting on January 23, 1989, the Board accepted the medical staff's recommendation for reappointment for 1989.

At the regular meeting of the medical staff on February 20, the plaintiff reported that he had not yet received his federal narcotics license. The Chief of the Medical Staff then suggested that the plaintiff meet with the Board on February 27, 1989 "explaining his status with the DEA and reasons why he does not have a current federal license."

The plaintiff and his lawyer attended and participated in the regular meeting of the Board on February 27, 1989. Through his lawyer, the plaintiff reported that he had applied for but had not received his federal narcotics license. Following a discussion, the action of the Board is reflected in the minutes:

> "A motion was made by Jim Hocker, seconded by Dennis Fiebelman that the board suspend the privileges of Dr. Seth Paskon as of 2/27/89 (10:45 p.m.) for his failure to have a current and valid federal narcotic license, pursuant to the summary suspension privileges [sic] of the medical staff bylaws. A voice vote was taken: Jim Hocker–Yes; Dennis Fiebelman–Yes; Fern Highley–Yes; Gary Plank–No and Judy Thompson–Yes. A majority of the Executive Committee voted to approve the suspension."

On March 27, 1989, the plaintiff, by a letter to the Chief of the Medical Staff, requested that the executive committee of the medical staff "conduct a hearing on the summary suspension purportedly issued by the Board of Directors...." In response, the Board appointed a hearing committee in accordance with Article VIII, Section I b. of the Medical Staff Bylaws. This committee scheduled a hearing for April 17, 1989 at 8 a.m., and advised plaintiff of his right to appear. On the advice of his lawyer, the plaintiff did not appear. The administrator of the hospital then advised the plaintiff that, in accordance with Article VIII, Sec-

tion V c., he had waived his right to a hearing and was deemed "to have accepted the adverse recommendation or decision involved."

The voluminous record reflects subsequent contacts between the plaintiff and the hospital administrator and the Board concerning the grant of temporary privileges to the plaintiff and for reappointment to the active staff. However, consideration of the plaintiff's four points on appeal do not require a summary or a restatement of the evidence concerning such subsequent contacts.

The plaintiff's first two points are interrelated. His first point is that the trial court erred in denying relief based upon a finding that the plaintiff's privileges had been "automatically" suspended by reason of his medical license having been placed upon probation by the Missouri Board of Registration for the Healing Arts. The plaintiff bases this point upon the proposition that the board of directors, as an administrative agency, temporarily suspended plaintiff's privileges because he had no federal narcotics license and that such action cannot be sustained on a different basis. He cites *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

It is not necessary for the disposition of this appeal to consider if the general principle stated in *Burlington* limits the authority of a trial court in an indirect attack upon the action of a board, as distinguished from direct judicial review of the action of a board. The judgment of the trial court is to be sustained if the Board had the authority to suspend the privileges of the plaintiff because he had no federal narcotics license. *Johnston v. Bates*, 778 S.W.2d 357 (Mo. App.1989).

The plaintiff's second point is "The trial court erred in upholding the vote by the Board of Directors to suspend Dr. Paskon's medical staff privileges contrary to the medical staff bylaws, rules and regulations which specifically delegate that function to the Executive Committee of the Board not just the Board...."

In making this point, and in responding to it, none of the parties refers to the last sentence in the paragraph concerning the suspension of plaintiff's privileges contained in the minutes of the meeting of the Board on February 27, 1989. That sentence reads: "A majority of the Executive Committee voted to approve the suspension." Since that sentence appears in the minutes of the Board, it is reasonable to conclude it refers to the Executive Committee of that Board. As noted, the bylaws of the Board creating the Executive Committee provide: "The Executive Committee shall report at the next Board of Directors meeting all actions taken by said committee, for ratification by the Board of Directors; said actions shall be recorded in the minutes of the Board of Directors." Considered in the light of that provision, the quoted sentence establishes that the Executive Committee of the Board did vote to suspend the plaintiff's privileges. The preceding part of that paragraph can be reasonably construed to mean that the Board ratified that suspension. The sentence can scarcely be considered as an inadvertent typing error. The three members of the Board constituting the Executive Committee attended the meeting of February 27, 1989. The minutes are signed by Gary Plank, Secretary/Treasurer, and George Bay, Chairman, two of the three members of that Executive Committee. In the absence of contrary evidence, a party is bound by evidence he introduces. *Citizens Discount and Investment Corp. v. Wood*, 435 S.W.2d 717 (Mo.App.1968); *Hastings & Chivetta Architects v. Burch*, 794 S.W.2d 294 (Mo.App.1990). These minutes demonstrate the plaintiff's second point has no merit.

However, the effectiveness of the action of the Board in suspending the plaintiff's privileges need not rest upon that basis. The plaintiff's position is that the bylaws of the medical staff restrict the power of the Board to govern who shall be accorded privileges of practicing in the hospital. Those bylaws do prescribe the qualifications and prerequisites necessary for professionals to be accorded privileges of practicing in the hospital. Those bylaws were approved by the Board. The plaintiff alleges that the reappointment of the plaintiff to the active medical staff "resulted in a contract being entered into between the plaintiff and defendant Salem Memorial District Hospital ... the terms of which are set forth in the aforementioned medical staff bylaws...." The defendant answers by admitting that such reappointment resulted in such a contract and "*that some of the terms* of the contract are set forth in the aforementioned medical staff bylaws, rules and regulations of defendant hospital, but denies that all of the terms of said contract are therein contained." (Emphasis added.) Perhaps that answer contemplates the fact that the power of the Board of Directors is not exclusively defined by those bylaws.

The general power of the Board is expressly defined by statute. "The board of directors of a district shall possess and exercise all of its legislative and executive powers...." § 206.100.1. The specific power of the board to determine who may practice in the hospital is also expressly declared by statute. "... General practitioners may practice in the hospital in accordance with their competence as recommended by the professional staff and *as authorized by the board.*" § 206.105.2. (Emphasis added.)

The fundamental power of the Board is recognized by the following portion of the "Preamble" to the bylaws of the medical staff.

"WHEREAS, it is recognized that the medical staff is responsible for the quality of medical care in the hospital and must accept and discharge this responsibility, subject to the ultimate authority of the hospital governing body, ..."

Those bylaws, adopted by the active medical staff, give the Executive Committee of the Board and other committees and individuals authority to summarily suspend the plaintiff's privileges. However, it is the general rule that the grant of authority to an executive committee of a board of directors does not deprive that board of its ultimate authority.

"Moreover it is to be borne in mind that while a corporation may conduct its busi-

ness through its president and other officers who are the agents of the corporation, the ultimate source of *all authority lies in the board of directors* who stand in the place of and for the individual stockholders, and in the sense of the control they exercise over corporate affairs may be said to actually constitute the corporation." *Federal Land Bank of St. Louis v. Bross,* 122 S.W.2d 35, 39 (Mo.App.1938). (Emphasis added.)

The reservation of that ultimate authority is recognized by the section of the bylaws of the Board creating the Executive Committee, Article V, 2., which requires Board ratification of all actions of that committee.

Considered in the light of the statutes and bylaws of the Board, Article VII, Section II of the Medical Staff Bylaws "Summary Suspension", granting power to summarily suspend the privileges of the plaintiff to the Executive Committee, should be construed to recognize that the same power exists in the Board. If not so construed, that section does not deprive the Board of that power for two reasons. Nothing in the bylaws of the medical staff provides that the Board does not retain that power. Even if those bylaws purported to deprive the Board of that power, they would be ineffective to do so.

> "[T]he powers and duties mentioned in this subsection of the ordinance are placed in the mayor and the council and they *cannot by ordinance be delegated to others.* Therefore, Section 4(c) is in conflict with the statutes insofar as it purports to delegate to the City Administrator any of the powers enumerated therein." *Pearson v. City of Washington,* 439 S.W.2d 756, 761 (Mo.1969). (Emphasis added.)

The Board had authority to approve, or to temporarily suspend the privileges of the plaintiff and "effectively" did so. The plaintiff's second point has no merit.

■ The plaintiff's third point is that the trial court erred in holding that he was not entitled to a hearing by the executive committee of the medical staff as required by Article VII, Section II b. of the Medical Staff Bylaws. That provision, as well as the provisions concerning "Hearing and Appellate Review Procedure", Article VIII, Section I a. and b., have been quoted above. Article VII, Section II b. provides that upon a summary suspension of privileges, a practitioner is entitled to a hearing by the executive committee of the medical staff "in accordance with Article VIII". When those provisions are read in context, Article VII, Section II b. recognizes that a hearing by the executive committee of the medical staff is required when a temporary suspension is based upon a finding that is within the expertise of that committee. The Board approved the medical staff's recommendation that the plaintiff be granted privileges for 1989 pending receipt of his federal narcotics license. Such a hearing was not required when the plaintiff admitted he had not received and did not have a federal narcotics license required as a requisite to practicing in the hospital. When any "decision by the governing body" affects a practitioner's "exercise of clinical privileges, and such decision *is not based on prior adverse recommendation* by the executive committee ... he shall be entitled to a hearing by a committee appointed by the governing body...." Article VIII, Section I b. (Emphasis added.) The plaintiff was tendered a hearing by such a committee and his third point is denied.

■ The plaintiff's fourth point is that the trial court erred in finding the plaintiff was an "employee" within the meaning of § 610.021(3) of the "Sunshine Law". The relevant part of that subsection provides that a public governmental body may conduct a closed meeting relating to "[h]iring, firing, disciplining or promoting an employee of a public governmental body." The trial court based its finding upon the fact that all professionals accorded clinical privileges were required on prescribed shifts to staff the emergency room of the hospital. For this work, the plaintiff was paid by the hospital an hourly wage or compensation. The plaintiff argues he was not an employee, but an independent contractor. He cites the fact the District did not deduct withholding taxes from his compensation and did not pay FICA or FUTA based on

that compensation. That action may or may not correctly reflect the plaintiff's status under the tax laws. It does not establish that the hospital is not responsible for the plaintiff's action when he is providing a service for the hospital at an hourly rate.

■ The term "employee" has many meanings. *Auto Owners Mut. Ins. Co. v. Wieners*, 791 S.W.2d 751 (Mo.App.1990). The purpose of the "employee" exception is to encourage uninhibited discussion of the qualifications and conduct of one who acts on behalf of a public governmental body. To permit such discussion in a closed meeting inures to the benefit of both parties. As a member of the active staff, the plaintiff regularly renders service on behalf of and is paid by the District and is an "employee" within the meaning of § 610.021(3). That being so, it is not necessary to consider the legal effect of the presence and participation of the plaintiff and his lawyer at the meeting. Nor is it necessary to weigh all the circumstances, including that presence and participation, in determining the public interest in sustaining the validity of the action of the Board. § 610.027.4. The plaintiff's final point has no merit and the judgment is affirmed.

PREWITT and CROW, JJ., concur.

## ON PLAINTIFF'S MOTION FOR RE-HEARING OR TO TRANSFER TO SUPREME COURT

PER CURIAM:

■ Plaintiff, Seth C. Paskon, has filed a motion for rehearing or transfer with extensive suggestions. The purpose of and limitations upon the content of such a motion are set forth by Rule 84.17. The fundamental precept is found in the first sentence of that Rule. "A motion for rehearing shall briefly and distinctly state the grounds upon which a rehearing is sought." Such a motion is not properly used to reargue issues determined by an opinion. *Ackerman v. Globe–Democrat Publishing Company*, 368 S.W.2d 469 (Mo. 1963), cert. denied, 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 276 (1963).

■ The instant motion violates both the spirit and the letter of Rule 84.17. It not only reargues the plaintiff's appeal, but it does so in an unacceptable manner.

First, it premises the reargument on an unwarranted attack upon the integrity and the motives of the members of the Board of Directors and its attorney. The attack will not be set forth at length. It is sufficient to observe it concludes with the following. "Seizing on the fact that the Appellant had not yet received his federal narcotics license, the Board manufactured grounds which, on their face, appeared to legitimize its purported summary suspension action." This attack upon the members of the Board, who serve without compensation, is unsupported by the record. Such an untimely, ill-founded, scurrilous attack has no place in a motion for rehearing.

Second, the plaintiff's reargument primarily consists of a series of conclusory characterizations of alleged errors in the opinion. At first blush, those allegations collectively present a facade of significance which vanishes upon analytical examination of each assertion. Examples of such allegations will be mentioned. The motion alleges "That Opinion contains erroneous factual findings upon which the Court relied in formulating its conclusions." Upon examination, the plaintiff's assertions of specific erroneous factual findings are without merit. For example, referring to the opinion's use of the term "temporary suspension", the plaintiff charges "this Court goes out of its way to create this new category of suspension ... and thereby permits the Board to bypass the hearing procedures set forth in its Bylaws and mandated by the requirements of due process". This court's reference to a "temporary" suspension is an acknowledgment of the inherent meaning of the term "suspension", as distinguished from "termination." One accepted meaning of suspension is "temporary removal from office or privileges." Webster's New Collegiate Dictionary (1977). The Board did not bypass its bylaws which contain no provision for a hearing. It did tender the plaintiff the

hearing called for by the Medical Staff Bylaws. This charge is vacuous.

A further example is the plaintiff's argument the Board unconditionally reappointed him to the medical staff for 1989. Whether or not that is the case, does not alter the result. Even if the plaintiff was unconditionally reappointed, the Board had authority to terminate the plaintiff's privileges upon his disqualification under the Medical Staff Bylaws. Nonetheless, this is an instance of the plaintiff's assertion of his interpretation of the evidence to be unquestioned fact. The minutes evidencing plaintiff's reappointment to the medical staff, include the following: "A motion was made by Judy Thompson *to accept the medical staff's recommendation* to reappoint the above stated physicians to the medical staff for the year 1989". (Emphasis added.) That recommendation was for approval "pending receipt of copies of federal licenses of Doctors ... and Paskon."

The plaintiff also argues the action of the Board was invalid because "Administrative Procedures Must Be Followed." In an attempt to limit the authority of the Board of Directors, he quotes a portion of the bylaws of the Board of Directors. "That Bylaw provides *inter alia:* '... except as limited by these bylaws *or by the specific instructions of the Board of Directors.*' Such specific instructions are contained in the Medical Staff Bylaws which were approved by the Board."

The bylaw of the Board of Directors so quoted and relied upon by the plaintiff is taken completely out of context. The portion of those bylaws quoted is a limitation upon the power of the "Executive Committee" of the Board of Directors.

The nature and scope of the authority of the Board of Directors is stated in the principal opinion and will not be repeated. The recognition of that authority is scarcely novel.

"As to every physician, podiatrist and dentist admitted to practice in the hospital, the board of trustees is the supreme governing authority of the hospital and admission to practice is conditioned upon authorization by the board. Section 205.-195. The board of trustees as the governing body of the hospital is the supreme legal authority in the hospital. 13 CSR 50–20.030(1)(A)(3). [Rescinded November 11, 1982—Replaced by 13 CSR–50–20.021 effective November 11, 1982.]" *Long v. Bates County Memorial Hosp.,* 667 S.W.2d 419, 424 (Mo.App.1983).

The plaintiff's motion concludes with a further attack upon the Board of Director's attorney and an allegation of fundamental error by this court. "Again maneuvering for a substantive position, the Board's attorney, with full knowledge that the Board had approved the Bylaws, the consequences of which it was trying desperately to avoid, grasped on to the straw of the Board's ultimate authority to govern the Hospital. As inequitable and shocking as this result is, the Court herein has allowed this to stand by applying the wrong standard of review to this case."

To support this claim, plaintiff again cites cases noted in the opinion to limit the scope of review by the trial court and this court. Those cases deal with the direct judicial review of "contested cases" heard and determined by an administrative agency. The limitations upon such direct judicial review are complex and can be understood only by a thorough study of those cases. Those limitations, which are subject to exception, are generally recognized in this state. *Mills v. Federal Soldiers Home,* 549 S.W.2d 862 (Mo. banc 1977). However, the limitations applicable to the direct judicial review of a contested case need not be further considered.

The plaintiff has failed to distinguish the direct judicial review of a "contested case" from the review, in an independent judicial proceeding, of an agency decision in an "uncontested case". Cf. §§ 536.140 and 536.150. The significant differences in procedure and the scope of review between "contested" and "uncontested" cases before an administrative agency are discussed in *Benton–Hecht Moving & Storage v. Call,* 782 S.W.2d 668 (Mo.App.1989). See also Ch. 8, Adjudication—Introduction—Definition, and Ch. 12, Adjudication—Judicial Review. 20 Missouri Practice, Ad-

ministrative Practice & Procedure, (Neely & Shinn) (1986).

The plaintiff's petition for a declaratory judgment and injunction was filed more than 30 days after notice of the administrative decision. If the suspension of the plaintiff's privileges was a "contested" case, the circuit court and this court had no jurisdiction and the plaintiff's appeal should have been dismissed. *State ex rel. St. Louis County v. Enright,* 729 S.W.2d 537 (Mo.App.1987).

But, that suspension was an "uncontested" case. *Long v. Bates County Memorial Hosp.,* supra. The record before the trial court consisted of exhibits and depositions. That is the record before this court.

"The action before the Board was an *uncontested* case, thus judicial review is prescribed by § 536.150, RSMo 1978 (formerly § 536.105)....

.　　.　　.　　.　　.

A judgment entered pursuant to § 536.150 is essentially the same as any other judgment declared in a court-tried case...." *Long* at 421, 422 (Emphasis in original).

"The judgment the circuit court renders under § 536.150 and Rule 100.08, albeit distinctive in subject matter and therefore in scope, is of the essential quality of other judgments declared in a case tried to the court without a jury." *Phipps v. School Dist. of Kansas City,* 645 S.W.2d 91, 96 (Mo.App.1982).

The rule applicable to cases tried to the court is, "we must affirm the trial court if its ruling was proper for any reason, even if the grounds assigned were wrong." *Arthur v. Jablonow,* 665 S.W.2d 364, 365 (Mo.App.1984). While the reason assigned by the trial court was proper, that judgment could have rested on a number of valid reasons, as noted in the opinion. The judgment of the trial court did not erroneously declare or apply the law and was supported by the evidence. The motion for rehearing or transfer is denied.

All concur.